JAMES RIGGIN *et al.*, plaintiffs in error, *v.* THOMAS MULLIGAN, defendant in error.

## *Error to Madison.*

If a judgment creditor takes out an execution within one year from the rendition of his judgment, his judgment will be a lien on the debtor's land for the period of seven years. After this period, it ceases to be a lien as against *bona fide* purchasers, or subsequent incumbrancers by mortgage, judgment or otherwise.

A. conveyed to B. certain land in fee simple, and subsequently B. conveyed the same to C. Prior to the conveyance by A. his creditor had recovered a judgment against him and issued execution thereon immediately. Several executions were issued and returned, and one of them was levied upon the premises in question about four years after the judgment was recovered and subsequently to the purchase by C. After a lapse of more than eleven years from the rendition of judgment, a *venditioni exponas* was issued, when C. sued out an injunction against the creditor and the sheriff holding the execution, to prevent a sale of the land. The injunction was made perpetual by the Circuit Court and its decree was affirmed by the Supreme Court.

BILL IN CHANCERY for an injunction, &c. in the Madison Circuit Court, filed by the defendant in error against the plaintiffs in error, James Riggin, a judgment creditor, and Andrew Miller, sheriff of said county. The cause came on to be heard before the Hon. Gustàvus P. Koerner, at the August term 1847, upon a demurrer to the bill, which was overruled, and the injunction issued by order of the Master in Chancery, was made perpetual.

The substance of the bill will be found in the Opinion of Court.

*W. H. Underwood,* for the plaintiffs in error.

1. Where an execution has been levied on land in its life time and returned, a *venditioni exponas* may issue either to the officer levying the same, or to his successor in office, who may sell the property levied upon. *Bellingall* v. *Duncan,* 3 Gilm. 481. And although no continuance roll had been kept. *Lampsett* v. *Dickinson,* 2 Scam. 440–1.

2. An execution levied, preserves the judgment in life as to the property levied upon. 2 U. S. Dig. 349, § 780; Ib. 354, § 887.

3.  Mulligan purchased while the judgment was in full force, of record and with constructive notice. A *bona fide* purchaser *is* one *without notice of a prior claim or incumbrance. Robinson* v. *Rowan,* 2 Scam. 501; R. L. 370, § 1. A person with full knowledge of an unsatisfied judgment, and with knowledge that the judgment debtor has little other property, and not enough to satisfy the same, is not a *bona fide* purchaser, although he purchases after the judgment lien expires. 5 Paige, 493.

4.  A writ of injunction releases all irregularities. 2 U. S. Dig. 322, § 190.

5.  The judgment debtor and the grantor of Mulligan, having made warranty deeds, should have been made parties. *Scott* v. *Bennett,* 1 Gilm. 646–7–8.

*J. Gillespie,* for the defendant in error.

The Opinion of the Court was delivered by

Purple, J.   On the 12th day of February, A. D. 1845, Mulligan filed his bill in Chancery against Riggin and Miller, alleging that on the 8th day of April, 1834, one Robert Whiteside conveyed by deed, in fee simple, to one Jacob Swiggart, the S. W. qr. 16, T. 3 N., R. 9 W. in Madison county, and that said Swiggart on the 10th day of September, A. D. 1836, conveyed the same land by a similar deed to Mulligan. Both were warranty deeds, as per exhibits. That Mulligan has had the possession of the premises ever since, and that he had no knowledge that any other person had any claim or lien on the premises up to about the first day of January, A. D. 1845. That on the 31st day of May, 1833, Riggin recovered a judgment against Robert Whiteside for $77·85 debt and damages, besides costs, in Madison Circuit Court. That on the 14th day of June, A. D. 1833, a *fi. fa.* issued on said judgment, which was returned on the 22d day of April, 1834, by the sheriff of said county by order of said Riggin. That on the 22d day of April, A. D. 1834, an *alias fi. fa.* was issued which was afterwards, on the 8th day of May, 1837, returned by the sheriff of said county indorsed:

"Levied this execution 14th day of May 1834, on the following described lands, as the property of the within defendant, to wit: one hundred and ten acres, a part of the S. W. qr. of S. No. 4 N., R. 9 W. the north and east part of said quarter in the county of Madison.

N. BUCKMASTER, S. M. C.

This execution is suspended at the suggestion of the parties interested, there being doubt respecting the rights of the defendants to the property levied on."

That afterwards, on the 7th day of June, 1837, a *pluries fi. fa.* was issued and returned by the sheriff of said county; that on the 9th day of June, 1837, he levied said execution on the said S. W. qr. of S. 16, T. 3 N., R. 9 W., &c. And that on the 31st day of December, 1844, more than eleven years after the rendition of said judgment, said Riggin caused a *venditioni exponas* to be issued to the present sheriff of said county, commanding him to sell said last described land, and that defendant Miller, plaintiff as aforesaid, had advertised said land for sale to satisfy said judgment, &c. The bill prays for an injunction restraining said defendants from proceeding on said judgment against said land, and for general relief. Upon this bill an injunction was ordered by the Master in Chancery. Afterwards, on the 5th day of November, A. D. 1846, the defendants filed a demurrer to said bill and for causes of demurrer set down that there was no equity in said bill, nor were proper parties made thereto, to wit: the heirs or legal representatives of the said judgment debtor, if he was deceased, and thereupon moved to dissolve the injunction. And afterwards, at the same term of said Court, said demurrer was overruled, and the injunction afterwards, on the 19th day of August, 1847, made perpetual and a decree for costs rendered against both of said plaintiffs in error. The plaintiffs in error now assign for error,

1. The Court below erred in overruling their demurrer to the complainants' bill of complaint.

2. In rendering of the decree aforesaid.

3. In not dissolving the injunction and dismissing the bill.

One point to be determined in this case is whether, as

against a *bona fide* purchaser under the statute of this State, the lien of a judgment creditor continues in force for a longer period than seven years; when such creditor neglects to sell the encumbered property within that time, though the purchase may have been made after the rendition of the judgment and with notice of its existence.

The statute reads as follows: "That all and singular the goods and chattels, lands, tenements, and real estate of every person against whom any judgment has been or hereafter shall be obtained in any Court of record, either at Law or in Equity, for any debt, damages, costs or other sum of money, shall be liable to be sold upon execution to be issued upon such judgment; and the said judgment shall be a lien on such lands, tenements and real estate, from the last day of the term of the Court in which the same may be rendered, for the period of seven years; *provided,* that execution be issued at any time within one year on such judgment, and from and after the said seven years, the same shall cease to be a lien on any real estate, as against *bona fide* purchasers, or subsequent incumbrancers by mortgage, judgment or otherwise." R. L. 1833, 370.

The question of the construction of this statute has never before been presented to this Court, and being one of importance as regards the rights and interests of the citizens, has been carefully considered. The judgment of the Court has been assisted in its conclusions by reference to the decisions of other Courts upon statutes similar to ours.

The statute of Ohio, as against the debtor, makes the lien of a judgment indefinite in point of time. It is however provided, that "if execution shall not be sued out within five years from the date of any judgment that now is or may hereafter be rendered in any Court within this State, or if five years shall have intervened between the date of the first execution issued on any such judgment obtained as aforesaid, and the time of suing out another execution thereon, such judgment shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor." R. L. Ohio, 671, §101. The 102d section of the same Act provides that

any such judgment may be revived by action of debt or *scire facias*.

Under this law it has been held, in the case of Norton v. Bacon, Curtis and others, that when a purchase had been made *bona fide,* after the lien of a judgment creditor attached, and the creditor had permitted (after having sued out several executions,) five years to elapse between the time of issuing his executions, the lien of his judgment against the land was lost. That when revived, so far as the judgment debtor was concerned, the lien of the revived judgment existed in all its original force; but that it did not follow that the rights of others, acquired or subsisting under the dormancy of the judgment, were subordinate to the revived lien. 5 Ohio, 511.

The Act of New York upon the same subject reads thus: "All judgments hereafter to be rendered, shall cease to be a lien on any real estate as against *bona fide* purchasers or subsequent incumbrancers by mortgage, judgment or otherwise, from and after ten years from the time the same shall be docketed."

The Supreme Court of the State of New York, in the case *Little* v. *Harvey*, reported in 9 Wend. 157, put a construction upon their statute.

The plaintiff, (it being an Ejectment suit,) claimed under a deed made on a sheriff's sale, under a judgment in his favor against one Davis Hopkins, under whom also the defendant claimed. The plaintiff's judgment was docketed on the 18th Feb. 1828. Execution was issued and delivered to the sheriff on the 13th day of May, 1828, which was tested on the 5th of February preceding. The sale was stayed by a Judge's order until the 6th of Sept. 1828, when the premises were sold and bought by the plaintiff, and a deed executed to him by the sheriff on the 15th Dec. 1829. The defendant introduced a mortgage dated the 19th day of April, 1828, and the record of a regular foreclosure and title in himself under the same.

The plaintiff offered to prove that the defendant took his mortgage with a full knowledge of the plaintiff's judgment.

The evidence was excluded by the Court. This decision was sustained by the Supreme Court, who, in delivering an opinion in the case, hold the doctrine, that all purchasers are to be regarded *bona fide*, except those who purchase with fraudulent intent; and that it is wholly immaterial about the knowledge of the former judgment or incumbrance.

In the case of *Tufts' Administrators* v. *Tufts*, 18 Wend. 611, under a similar law, the Court held that subsequent judgment creditors and purchasers, whose rights accrued between the rendition of the judgment, and the expiration of ten years, were protected by the statute.

We are unable to point out any distinction in principle between the cases before mentioned, and the one under consideration. Stripped of its unnecessary verbiage, the plain reading of our statute is: If a judgment creditor takes out his execution within one year from the rendition of his judgment, his judgment shall be a lien on his debtor's land for the period of seven years. After this period it shall cease to be a lien, as against *bona fide* purchasers, or subsequent incumbrancers by mortgage, judgment or otherwise. This view of the law is believed to be reasonable and just. Any other construction would operate as a serious embarrassment upon the transfer of real estate, and contravene the manifest intention of the Legislature. It would enable a creditor to lay by, for an indefinite extent of time, neglecting to enforce payment of his demand against his debtor, until he shall have become insolvent; when by due diligence his money might have easily been made, without detriment to the rights or interests of other creditors; and, until, on account of such insolvency, a purchaser would be remediless upon his covenants of warranty or otherwise.

In such a case as this, we think justice and the law unite in postponing the judgment creditor, and allowing the purchaser of this land to hold it discharged of the judgment lien.

One cause of demurrer to the bill filed in this cause in the Court below, and which is insisted on here, is the want of proper parties; and it is contended, that the heirs and legal

representatives of Robert Whiteside, the judgment debtor, should have been parties to the suit. Admitting that he was dead, and that there would be a legal presumption arising that he had heirs and legal representatives, (nothing of which appears by the record,) we cannot comprehend how they could be necessary parties to this proceeding, or have any interest in the result. The decree made here neither discharges nor enforces the judgment against them. In no event can it be evidence for or against them. They have no interest in the subject matter concerning which a decree is sought. They can only be compelled to pay the judgment. If it had been paid or any part of it, they can resist its collection when it is attempted to be enforced against them. The defendant in error only asks that Riggin shall not be permitted to subject his land to the payment of this stale judgment.

Under the circumstances it was improper that Miller, the sheriff, should have been charged with costs; but this was doubtless a clerical mistake in preparing the decree.

So far as the decree of the Circuit Court awards costs against the plaintiff in error, Miller, the same is reversed; in all other respects, it is affirmed at the costs of the plaintiff, Riggin, both in this Court and in the Court below.

*Decree affirmed.*