## J. YOUNG SCAMMON *et al.*
## *v.*
## CORNELIUS SWARTWOUT.

1. JUDGMENT LIENS — *how created — and of their duration.* It is by the statute alone that a lien by judgment exists at all on real estate, and therefore it must be controlled by the statute.

2. Seven years is the assigned duration of a lien on real estate, by a judgment rendered in a court of record, and it cannot be extended beyond that period.

3. HEIRS OF A JUDGMENT DEBTOR — *of their title to the realty as against a judgment creditor, and how they may be divested of their title.* Where a judgment debtor dies, the seven years lien having expired, his real estate descends to his heirs-at-law, out of whom the title cannot be divested, except in the mode provided by law, by some proceeding to which they are parties.

4. In such case, the judgment creditor may subject the real estate of his debtor in the hands of his heirs, to the satisfaction of his judgment, by proceedings by *scire facias* to revive the judgment, making the heirs parties, and then upon the judgment of revivor issue an execution and sell the realty.

5. But the creditor cannot divest the heirs of their title to realty, acquired under such circumstances, simply by suing out an execution upon the original judgment, upon notice to the administrator, and obtaining a levy and sale under such execution.

6. Where such a course is pursued, the execution and all the proceedings under it will be void and of no effect, and, consequently, no valid title could grow up out of them.

7. EXECUTION — *when it may issue upon a judgment, wherein the defendant has died.* Section thirty-seven of the chapter in the Revised Statutes, entitled "Judgments and executions," which provides that execution may issue upon a judgment,

notwithstanding the death of the defendant, without first reviving the judgment against his heirs and legal representatives, was designed to apply to cases where there is an administrator or executor of a deceased debtor, and where there is a subsisting lien. In the absence of these elements, the plaintiff is bound to resort to a *scire facias.*

8. EXECUTION — *when it may issue upon a judgment wherein the plaintiff has died.* And so of sections forty and forty-one of the same chapter, which provide that the collection of the judgments of courts of record shall not be delayed by reason of the death of the plaintiff, and that the judgment lien created by law shall survive to his executor or administrator. The provisions of these sections were intended to meet cases where the seven years lien has not expired, and only such cases.

9. Section forty provides that in case of the death of the judgment creditor, his executor or administrator may cause the letters testamentary or of administration to be recorded in the court in which the judgment exists; after which execution may issue, and proceedings be had thereon, in the name of the executor or administrator, as such, in the same manner it could be done if the judgment existed in the name of the personal representative. If the seven years lien has not expired, the personal representative may obtain an execution in the manner indicated; but, even if the lien still exists, he cannot have the execution without first having produced and filed his letters testamentary or of administration in the court where the judgment was obtained. This is the condition on which he can obtain an execution in his fiduciary character.

10. So an execution cannot be issued at any time, upon one having previously been issued within a year and a day, as was insisted upon the authority of the case of *Lampsett* v. *Whitney,* 2 Scam. 441. As a matter of fact, in that case, seven years had not elapsed between the issuing of the *alias* writ of *fieri facias,* and the *pluries* writ which was sought to be quashed, and, therefore, it was not necessary to consider the effect of the act of 1825 which limits the lien of a judgment upon real estate to seven years. Moreover, our statute of limitations, which provides that judgments in a court of record may be revived by *scire facias,* or an action of debt may be brought thereon within twenty years next after the date of such judgment and not after, would seem to imply that an execution cannot be issued at any time.

11. The presumption is, that after the lapse of twenty years, the judgment has been extinguished, and this is rebutted only by bringing an action of debt, or suing out a writ of *scire facias.* It is not the design of the law to give to a *fieri facias* more vitality than the judgment on which it issued.

12. PRIORITY BETWEEN JUDGMENTS, *where the lien has expired. Semble,* where the lien of several judgments has expired, as to *bona fide* purchasers and subsequent incumbrances, the judgments will rank in relation to one another, according to their actual priority of date.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

This was an action of ejectment commenced in the court below by Cornelius Swartwout against J. Young Scammon, Thomas Kehoe and Mary Daily, for the recovery of lot 6, block 129, in the school section addition to Chicago. The case is fully stated in the opinion of the court.

Messrs. SCAMMON, McCAGG & FULLER, for the plaintiffs in error.

This was an action of ejectment, brought by Swartwout against Scammon, Kehoe and Mary Daily, to recover lot 6, block 129, school section addition to Chicago. The action was commenced in January, 1862, and after being continued from time to time, was, at the April Term, 1864, submitted to the court for trial upon the following agreed state of facts:

That Thomas Jenkins owned the demanded premises in fee in 1837, and until his death, August 2d, 1852. That he died intestate, and left no heirs resident in this State, and that no administrator of his estate has ever been appointed in this State.

Both the plaintiff and defendants claim title to the demanded premises under judgments against Jenkins, and the case will turn upon questions relating to the validity and regularity of the proceedings had to enforce those judgments.

Those proceedings, for convenience, are stated as follows:

### PLAINTIFF's TITLE.

*Swartwout* v. *Jenkins.*

Judgment, Cook Circuit Court, March 17, 1838, for $609.95.

Execution issued March 19, 1838, which was duly returned unsatisfied.

*Sci. fa.* sued out March 16, 1858, against, *inter alia,* Scammon as terre tenant of lot 6, block 129, etc.

Served on Rees, one of the defendants, and returned not served on the others.

*Alias sci. fa.* issued, but was not served on any of the defendants.

Judgment of revivor, March 7, 1859.

Execution issued May 2, 1859.

Levied on demanded premises, May 25, 1859.

Sold by sheriff to plaintiff, June 16, 1859.

Sheriff's deed to plaintiff, 1860.

### DEFENDANT'S TITLE.

*Demmond* v. *Jenkins.*

Judgment, Municipal Court of Chicago, April 17, 1838, for $——.

Execution issued January 14, 1839.

Demmond died in Will county, Illinois, July, 1854.

Sophia Demmond duly appointed executrix of his will, August 17, 1854.

She assigned the judgment in favor of her husband, to Rees, April 2, 1858.

Rees made affidavit of Jenkins' death; that he died intestate; that he left no heirs in this State; and that there was no administration of his estate in this State.

An execution issued in the name of Sophia Demmond, executrix, against the lot in controversy, among others, as the property of Jenkins, deceased, dated April 7, 1858, levied on the lot, April 8, 1858, sold by the sheriff, May 5th, 1858; and a sheriff's deed of it was made to Rees, August 9, 1859, and the defendants below set up the title thus acquired by Rees, as outstanding title in him, to defeat a recovery of Swartwout.

Both judgments were rendered in 1838, and an execution was issued on each of them, within one year after its rendition.

An execution was issued on the judgment under which Scammon *et al.* claim title, twenty years, wanting ten days, after the date of the judgment, and nineteen years, two months and twenty-three days after the date of the first execution that was issued.

Where an execution has been issued within a year and a day after date of a judgment, another execution may issue at any time, without reviving the judgment by *scire facias.* *Lampsett* v. *Whitney,* 2 Scam. 441; *Jackson dem. Thompson* v. *Stiles,* 9 Johns. 391; 2 Tidd's Pr. 1104, 994 in note; *Aires* v. *Hard-*

*ress*, 1 Strange, 100; *Thorp* v. *Fowler*, 5 Cow. 446; *Bank of Mississippi* v. *Catlett's Ex'rs*, 5 How. (Miss.) 176; *Payne* v. *Payne's Ex'rs*, 8 B. Mon. 391.

In this case the execution had issued more than twenty years after the last one, and was sustained. *Dowsman* v. *Potter*, 1 Mo. 368; *Jordan* v. *Petty*, 5 Fla. 326.

Demmond having died, an execution was properly issued in the name of the executrix of his will. R. S. 1845, 307, § 40, being the act of February 19th, 1841; Purple's Real Est. Stat. 338; *Durham et al.* v. *Heaton*, 28 Ill. 264.

As Jenkins died intestate, and there was no administrator of his estate, the execution in favor of Demmond, executrix, etc., was properly issued against the lot in controversy, as the property of Jenkins. Rev. Laws, 1845, 307, § 37, being the act of February 25th, 1843; Purple's Real Est. Stat. 348, 349.

From these premises we conclude, that the execution under which Rees acquired title to the demanded premises, was regularly issued and levied upon the demanded premises.

The levy was made just eleven months before the judgment of revivor was entered in the proceedings by Swartwout, to revive his judgment against Jenkins, and a sale was made on the Demmond execution, almost ten months before that judgment of revivor; the levy under the Demmond execution was made thirteen months and seventeen days before the levy of the Swartwout execution; and the sale under the Demmond execution was made thirteen months and eleven days before the sale under the Swartwout execution; and the deed to Rees was made more than a year before the deed to Swartwout; so that all the several proceedings had by the parties to the Demmond judgment, were prior, in point of time, to those under the Swartwout judgment; and, we insist, gave Rees the paramount title to the demanded premises, and that Scammon and his co-defendants may defend their possession under that outstanding title. *Rupert* v. *Mark*, 15 Ill. 541.

The parties to these proceedings acquired their respective interests in the premises, by virtue of the levies of their executions. Neither of their judgments was a lien on the premises,

as against each other, " or *bona fide* purchasers or incumbrancers by mortgage, judgments, or otherwise," after the lapse of seven years from the last day of the terms at which they were respectively rendered. Revised Laws 1845, 300, § 1, which is the act of January 17, 1825. Purple's Real Estate Stat. 328.

If these views are correct, then the title acquired by Rees was paramount to that acquired by Swartwout, and the court below erred in finding the issues for Swartwout and rendering the judgment in his favor.

The judgment of revivor, it is hardly necessary to say, became a lien on the premises only from the date of its entry, and not from the time of suing out the *sci. fa.*, or serving it; and further, that neither of the writs of *sci. fa.* sued out by Swartwout was served on Scammon, who was described as the tenant in possession of the premises in controversy.

It was served on Rees, but he was not the terre tenant of this lot, but of some other property described in the *sci. fa.*, and not in question in this suit, and he was not, therefore, disabled in any degree from buying the demanded premises at the sheriff's sale under the Demmond judgment, as he had no interest in them, or the proceedings against them.

Messrs. HOYNE, MILLER & LEWIS, for the defendant in error.

It is not disputed but that the plaintiff below acquired a good title by the sheriff's deed, unless such title had been previously conveyed by the sheriff to James H. Rees.

The *scire facias* to revive plaintiff's judgment was issued before the expiration of twenty years from the recovery of the judgment, and the issuing of this writ a single day within the time saves the bar. *Davidson* v. *Thornton*, 7 Bar. 128.

The heirs of Thomas Jenkins were named as the defendants in the first and in the alias writ, and there was a return of two nihils, which in a suit or proceeding by *scire facias* is equivalent to a personal service, and gives the court jurisdiction of the person.

The only question therefore is, whether Rees acquired a good title to the property.

The judgment under which he claims title was recovered in the Municipal Court of Chicago, April 17, 1838; execution was issued within one year, but the *alias* execution was not issued until April 7, 1858; it was levied April 8, 1858, and the sale was made under the execution May 5, 1858.

I.   At the time of the issuing of the *alias* execution, the judgment was not a lien upon the lot in controversy, even as against the heirs of Jenkins.

Our statute provides that " all and singular the goods and " chattels, lands, tenements and real estate of every person " against whom any judgment has been or may be hereafter ob- " tained in any court of record,   *   *   *   *   shall be liable to " be sold upon execution to be issued upon such judgment ; and " the said judgment shall be a lien upon such lands, tenements " and real estate from the last day of the term of the court in " which the same may be rendered, *for the period of seven years,* " provided, that execution be issued at any time within one year " on such judgment ; and from and after the said seven years the " same shall cease to be a lien on any real estate, as against *bona* "*fide* purchasers, or subsequent incumbrancers, by mortgage, " judgment or otherwise." Scates' Comp., 602, § 1.

The judgment lien upon lands is conferred by statute alone, and not as a common law right; it can only attach and become effective in the mode, at the time, and upon the conditions and limitations imposed by the statute itself. *Green* v. *Marks et al.,* 25 Ill. 223.

The period for which the statute makes the judgment a lien upon lands is *seven years,* and the statute nowhere says that it shall be a lien after that period. It provides, it is true, that from and after seven years it shall cease to be a lien as against *bona fide* purchasers, &c., but it does not provide that it shall not then cease to be a lien as against the judgment debtor and his heirs. As this lien is conferred by the statute alone, and the statute does not say that it shall exist for a longer period than *seven years,* it cannot be considered as existing beyond that time.

The provision of the New York statute limiting the lien of a

judgment as to subsequent purchasers, &c., is in the language of our statute, except that the period is ten instead of seven years; and in that State it is held that the lien continues after ten years as against the judgment debtor. But the New York statute creating the lien of the judgment does not at all limit its duration, except as to subsequent purchasers or incumbrancers. It merely binds the real estate of the debtor by the lien of the judgment, without fixing the time for the continuance of such lien.

The judgment lien having expired during the lifetime of Demmond, the plaintiff in the judgment, it could not survive in favor of the executrix of Demmond so as to entitle her to sue out execution. Scates' Comp., p. 610, §§ 40, 41.

The judgment lien having expired during the lifetime of Thomas Jenkins, the property in question descended to his heirs unaffected by the judgment, and could not have been taken from them except by a proceeding to which they were parties to revive the lien of the judgment. *Turney et al.* v. *Young,* 22 Ill. 253.

Even if Thomas Jenkins were living, the land in question could not have been sold upon the execution after the lien of the judgment had expired.

The execution is merely instrumental in enforcing the lien of a judgment already acquired. The execution and levy of it does not *create a* new and additional lien, independent of and distinct from that of the judgment, and when the execution issues and is levied in the lifetime of the judgment, by the expiration of the lien of the judgment the lien of the execution is gone. *Davis* v. *Ehrman,* 20 Penn. (8 Harris), 256; *Jameson's Appeal,* 6 Barr. 280; *Roe* v. *Stewart,* 5 Cow. 294.

The chancellor, in *Catlin* v. *Jackson,* 8 Johns. 427, says: "In several essentials the effect of the execution must be dif-"ferent from a *fi. fa.* levied on personal estate only. The "delivery of the *fi. fa.* gives no new rights to the plaintiff, "and vests no new interests. The general lien is created by "the judgment, and execution is merely to give that lien

" effect, not by vesting a possessory right to the land affected
" by it in the plaintiff, but by designating it for a conversion
" into money by the operation of the *fi. fa.*, and the act of the
" sheriff by virtue of it."

II. If the lien of the judgment continued after the expira-
tion of seven years as against the judgment debtor, the sale
under the execution upon the judgment did not take place
until the 8th of May, 1858, more than twenty years after the
judgment was recovered.

By the fifth section of an act entitled limitations, the remedy
by action of debt upon the judgment, and by *scire facias*, is
cut off, by the lapse of twenty years from its date. The statute
does not say that no execution shall issue after the twenty
years, but it says that a *scire facias*, which is simply an order
to show cause why the plaintiff should not have execution of
the judgment, shall not issue after that time. This is in effect
a denial of the plaintiff's right to have execution of his judg-
ment after the lapse of twenty years from its date. It is not
only an extinguishment of the judgment lien, but an effectual
bar to every remedy upon the judgment. If the plaintiff can
at any distance of time cause execution to be issued upon his
judgment, the above provision of our statute can be very easily
evaded, and its effect as a limitation be entirely defeated. The
statute is confined to judgments recovered in the courts of
record in this State, and such a court can issue its execution to
any county in this State, and as there is no way of pleading
to a *fi. fa.*, the judgment debtor would be without the power
of availing himself of the benefit intended to be conferred by
this statute.

The only way of allowing this statute to have the effect
intended by the legislature, is not only to regard the lien of
the judgment as gone, after the lapse of twenty years, but the
judgment itself as having been paid, unless, in the meantime,
the bar has been saved by the instituting of an action of debt,
or a proceeding by *sci. fa.* to revive the judgment.

The judgment cannot be revived, nor its lien continued or
prolonged, by the mere issuing and levy of an execution. *Roe*

v. *Stewart,* 5 Cow. 294; *Davis* v. *Ehrman,* 20 Penn. (8 Harris) 256.

III.   If the lien of the Rees judgment continued after the lapse of seven years, as against Jenkins and his heirs, so also did the lien of the judgment under which the plaintiff claims title, and the lien of both judgments having expired as to *bona fide* purchasers and subsequent incumbrancers in April, 1845, from and after that time they ranked in respect to each other *according to their priority of date,* the same as if the provision limiting the lien to seven years as to subsequent purchasers and incumbrancers, had not been passed.   This was distinctly held in the case of the *Peru Iron Co.,* 7 Cow. 540, 559.

Plaintiff's judgment was the older judgment, and the sale under the junior judgment did not defeat the plaintiff's right to sell under his judgment, and thereby get a complete title to the property.   *Rogers* v. *Dickey,* 1 Gilm. 644.

IV.   Our *sci. fa.* was sued out on the 16th of March, served on Rees on the 18th of March, and 15 days after (April 2), Rees procured an assignment to himself of the judgment under which the defendant claims, and caused the execution to issue on the 5th of April, purchased at the sale, and afterwards took a conveyance of the property.

He was a party defendant in plaintiff's proceeding to revive the judgment, and was bound by the final order of the court, which directed that this land should be sold to satisfy plaintiff's judgment.

He will not be permitted to set up any title or interest now, which he might have interposed as a defense to that proceeding. If he had, prior to February, 1859, by reason of the sale under his execution, acquired any interest in or title to this land, he was bound to have it made known, and the order or judgment which was rendered in this proceeding, is a bar to that interest.

A *scire facias* is a judicial writ or writ of execution, and founded on some matter of record, as judgments, &c., on which it lies to enforce the execution of them, or to vacate them, or set them aside.   Yet it is so far in the nature of an original as

to allow the defendants to plead to it.    8 Bacon's Abridgement, 598.

If the object of the proceeding is to revive a judgment, *it is a proceeding in the original action, and is but a continuation thereof.* *Dickey* v. *Craig,* 5 Paige, 284; *Executors of Wright* v. *Nutt,* 1 Term R. 388.

It is a step leading to the execution of a judgment already obtained, and its office is to restore the original force of the former judgment.  3 Miss. 26; 2 Florida, 165.  When the statute provides that a lien of a judgment shall cease at the expiration of five years from the date of its recovery, the *issuing of the sci. fa.* a single day within the time, preserves and continues the lien of the judgment.  *Davidson* v. *Thornton,* 7 Barr. 128.  The issuing of the writ being a continuation of the original suit, it is a continuation of it specifically against the lands which have descended, and upon which the judgment obtained in that suit was a lien, for by the writ, the heirs and tenants are required to show cause why the land, a particular description of which is set forth in the writ, should not be held to satisfy the judgment.  The court has jurisdiction by virtue of the original suit.  No personal service of the writ is necessary, as two nihils are equivalent to a personal service; and the final order of the court names the property which is mentioned in the writ, and directs that the judgment stand revived in respect to this property, and that the same be sold to satisfy it. It is therefore a *proceeding in rem.,* and the judgment reviving the former judgment must take effect by relation from the time the writ issues, at least as against subsequent purchasers or incumbrancers.

As to them it is *lis pendens,* and rights acquired after these proceedings are commenced must be subordinate to them.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This case is brought to this court on the following agreed state of facts:  It is agreed that both parties derive title to the demanded premises from Thomas Jenkins, who was the owner

in fee of the premises in 1837, and remained such owner until his death, August 2, 1852. That Jenkins died intestate, and left two heirs, Helen Jenkins and Maria Jenkins, but who were not residents of this State; and that no administrator of his estate has been appointed in this State.

It is further admitted that the plaintiff, Cornelius Swartwout, recovered a judgment against said Jenkins, in the Circuit Court of Cook county, March 17th, A. D. 1838, for the sum of $609.95; that execution issued upon this judgment March 19th, 1838, and was returned unsatisfied; that on the 16th of March, 1858, the plaintiff caused to be issued out of said court the following writ of *scire facias,* to revive said judgment:

*To the sheriff of said county, greeting:* Whereas, Cornelius Swartwout, to wit, on the seventeenth day of March, A. D. 1838, in our Circuit Court of Cook county, within and for the county of Cook, by the judgment of the same court, recovered against Thomas Jenkins the sum of six hundred and nine dollars and ninety-five cents, for damages which he had sustained by reason of the non-performing certain promises and undertakings, then lately made by the said Thomas Jenkins to the said Cornelius Swartwout, and also, seven dollars and ninety-three cents, for his costs and charges by him about his suit, in that behalf expended; whereof, the said Thomas Jenkins is convicted, as appears to us of record, and although judgment be thereupon given, yet execution of the damages and costs still remaining to be made to the said Cornelius Swartwout; and after the giving of the said judgment, to wit, on the second day of August, A. D. 1852, the said Thomas Jenkins died intestate, in fee simple of certain lands and tenements, to wit: Lot number fifty-seven (57), in the subdivision, made by Peter Temple, of blocks seventy-six and seventy-seven in school section addition to Chicago, according to the recorded plat thereof filed for record in the recorder's office of Cook county, September 27th, A. D. 1835, in book H, page 149 and 150, including all the right, title and interest of the said Thomas Jenkins in and to said blocks seventy-six and seventy-seven, whereof said Thomas Jenkins died seized, as aforesaid.

Whereof, James H. Rees is now tenant, and also lot six in block one hundred and twenty-nine, school section addition to Chicago, whereof J. Y. Scammon is tenant; also, the southeast quarter of the northeast quarter of section fourteen, township thirty-eight, range thirteen east, in the county of Cook, State of Illinois; and leaving Maria Jenkins and Helen Jenkins his heirs-at-law, and to whom the said lands and tenements aforesaid descended; and whereas, there are no personal representatives of the said Thomas Jenkins, deceased, and the said judgment still remains in full force and effect in no wise set aside, reversed, paid off or satisfied, as we have received information of the said Cornelius Swartwout in our court aforesaid.

Whereof, the said Cornelius Swartwout hath besought us to provide him a proper remedy in this behalf; and we being willing that what is just in this behalf should be done, command you that you make known to the said heirs-at-law of the said Thomas Jenkins, and also to the said tenant of the tenements aforesaid, that they be before our said court on the second Monday of April next, to show, if they have or know why the damages and costs aforesaid ought not to be levied of those lands and tenements according to the force, form and effect of the recovery aforesaid, if it shall seem expedient for him so to do; and further, to do and receive what our said court shall then and there consider of him in this behalf; and have you then and there this writ.

Witness, &c., this 16th day of March, 1858.

WM. L. CHURCH, *Clerk.*

Which was served on James H. Rees, the defendant therein named, on the 18th of March, 1858, and returned not found as to J. Young Scammon, Maria Jenkins and Helen Jenkins; that an alias writ of *scire facias* was issued out of said court, and returned not found as to said J. Young Scammon, Maria Jenkins and Helen Jenkins; and that subsequently, on the 7th day of March, A. D. 1859, the following judgment of revival was entered in said cause:

*Scire facias to revive judgment.* — This day comes the said plaintiff, by Hoyne, Miller & Lewis his attorneys, and it appearing to the court that, on the 17th of March, A. D. 1838, (of) in the Circuit Court of Cook county, Illinois, the said plaintiff, by the consideration and judgment of said court, recovered against the said Thomas Jenkins the sum of six hundred and nine dollars and ninety-five cents for his damages, which he had sustained by reason of the not performing of certain promises and undertakings then lately made by the said Thomas Jenkins to the said plaintiff. And also, seven dollars and ninety-three cents for his costs and charges by him about his suit, in that behalf expended; whereof the said Thomas Jenkins is convicted, as appears of record in said court.

And it further appearing to the court that after the rendition of said judgment, to wit, on the second day of August, A. D. 1852, the said Thomas Jenkins died intestate, and that he did die seized in fee simple of the following described land and tenements, to wit: lot number fifty-seven (57) in the subdivision, made by Peter Temple of blocks seventy-six and seventy-seven in school section addition to Chicago, according to the recorded plat thereof, filed for record in the recorder's office of Cook county, September 27th, 1835, in book H, pages 149 and 150, including all the right, title and interest of the said Thomas Jenkins in and to said blocks seventy-six and seventy-seven, whereof the said James H. Rees is now tenant. And that he did die seized of lot six in block one hundred and twenty-nine, school section addition to Chicago, whereof the said J. Y. Scammon is now tenant; and also the southeast quarter of the northeast quarter of section fourteen, township thirty-eight, range thirteen east, in the county of Cook aforesaid; and the said Maria Jenkins and Helen Jenkins are the children and heirs-at-law of the said Thomas Jenkins, deceased, and to whom the lands and tenements aforesaid descended; and that there are no personal representatives of the said Thomas Jenkins, deceased; and the said plaintiff having complained to this court that he has received no satisfaction for his said damages and costs; and it appearing to the court that the said judgment still remains

in full force and effect, and in nowise set aside, reversed, paid off or satisfied; and it further appearing to the court that due personal service of process of *scire facias* issued in this cause having been had on the said defendants, and they being now three times severally, solemnly called in open court, come not, nor does any person for them, but herein they severally make default; which, on motion of said plaintiff's attorneys, is ordered to be, and the same is taken and entered of record.

Therefore, it is ordered by the court, that the said judgment be, and the same hereby is, revived, as to the aforesaid lands and tenements, and that an execution issue on the same to the sheriff of Cook county, commanding him to levy of and sell the aforesaid lands and tenements, or so much thereof as may be necessary to satisfy the said plaintiff's aforesaid judgment, interest and costs, as also accruing interest and costs thereon."

That execution issued upon said judgment May 2, 1859, and was levied upon said demanded premises, May 25th, 1859, and said premises were sold, under said execution, to the plaintiff, June 16th, 1859, and a certificate of such sale was duly filed in the recorder's office of Cook county; and that subsequently and on the 27th day of October, 1860, a sheriff's deed of said premises was duly executed to the plaintiff.

It is also agreed that Martin H. Demmond recovered a judgment, in the Municipal Court of the city of Chicago, against said Thomas Jenkins, impleaded with Reynolds & Gilbert, April 17th, 1838, for the sum of $828.00; that an execution issued upon that judgment, dated January 14th, 1839; that Demmond died in Will county, Illinois, July 18th, 1854, and his widow, Sophia Demmond, was duly appointed executrix of his last will and testament, August 17th, 1854; that she assigned the judgment in favor of her husband, to James H. Rees, April 2, 1858, who made affidavit of Jenkins' death; that he died intestate, leaving no heirs in this State, and had no executors or administrators of his estate in this State; and prayed for a special execution to issue against this lot in controversy; that execution issued, as prayed for, April 7th, 1858, was levied on the premises in question, April

8th, 1858; sold May 5th, 1858, and a sheriff's deed made of them to Rees, August 9th, 1859.

That defendant, Scammon, was in possession of the premises at the commencement of this suit, and sets up the deed to Rees as an outstanding title, to defeat a recovery by the plaintiff.

All the foregoing facts appear of record in the Circuit Court of Cook county, and Municipal Court, Record No. 1017.

Upon the foregoing facts, the court found the issues for the plaintiff, and rendered judgment in his favor. To which decision and finding of the court, the defendant then and there excepted; and said agreed case was filed with the clerk of said Circuit Court, and by him certified to the Supreme Court of this State, as is provided for by law.

The errors assigned are, that the court erred, in finding the issues and rendering judgment for the plaintiff.

That the court erred, in not rendering judgment for the defendant.

It appears by the facts agreed, that both parties claimed the premises in controversy, through one Thomas Jenkins,— the plaintiff below, Swartwout, in virtue of certain legal proceedings commencing with a judgment in his favor, in the Cook Circuit Court rendered on the 17th of March, 1838, against Thomas Jenkins, on which execution issued March 19th, 1838, and returned unsatisfied, and which culminated in an execution issued on a revival of this judgment against the heirs-at-law of Jenkins, and the terre tenants of the premises, and in a deed from the sheriff to the plaintiff dated October 27th, 1860.

It does not appear to be disputed that the plaintiff acquired a good title to the premises by the sheriff's deed, unless such title had been previously conveyed by the sheriff to the defendant Rees, under whom his co-defendant Scammon claims, in virtue of the proceedings under the judgment in the Municipal Court of Chicago, rendered in favor of Martin H. Demmond against Thomas Jenkins, on the 17th of April, 1838.

It is to this branch of the case, the defendant's title, we will confine our view.

It is contended by the counsel defending this title, that the execution under which Rees purchased, was regularly issued and levied upon the premises. If this be so, the defendant's case is made out. What are the facts and the law, on this point?

The judgment in favor of Demmond was rendered April 17th, 1838, and execution issued thereon, January 14th, 1839. Demmond died in Will county on the 18th of July, 1854. The execution under which defendant claims, was issued April 7th, 1858, levied on the demanded premises April 8th, 1858, sold May 5th, 1858, and a sheriff's deed executed to Rees August 9th, 1859.

The first question arising is, was the judgment of Demmond, at the time the alias execution issued, April 7, 1858, a lien upon the premises in controversy. This is to be determined by reference to our statute on judgments and executions. Ch. 57.

The first section of that statute provides, that all and singular the goods and chattels, lands, tenements and real estate of every person against whom any judgment has been obtained in any court of record, for any debt, damages, &c., shall be liable to be sold upon execution to be issued on such judgment. And the said judgment shall be a lien on such lands, &c., from the last day of the term of the court in which it is rendered for the period of seven years, provided that execution be issued at any time within one year on such judgment, and from and after the said seven years, the same shall cease to be a lien on any real estate as against *bona fide* purchasers, or subsequent incumbrancers by mortgage, judgment or otherwise. Scates' Comp. 602.

It is by this statute alone that a lien by judgment exists at all on real estate, and, therefore, it must be controlled by the statute. Seven years is the assigned duration of a lien on real estate, by a judgment rendered in a court of record, and it cannot be extended beyond that period. Demmond, then, lost his lien after the expiration of seven years, and so did Swartwout, the plaintiff.

How then do the subsequent proceedings affect the parties? By the death of Jenkins, the judgment debtor, his real estate descended to his heirs-at-law, out of whom the title could not be divested except in the mode provided by law, by some proceeding to which they should be parties. That mode was pursued by Swartwout, who caused a *scire facias* to issue, in apt time, against the heirs-at-law of Jenkins, and against the terre tenants of his lands, and a judgment of revivor was obtained against them, and a regular execution and sale under it to the plaintiff.

What was the course pursued by the claimant under the Demmond judgment? The lien was gone, the plaintiff was dead, and letters testamentary had issued to his executrix, who assigned the judgment to Rees. In such cases, what does the statute above cited provide? By section 40, it is declared the collection of judgments of courts of record shall not be delayed or hindered by the death of the plaintiff or person in whose name the judgment shall exist, but the executor or administrator may cause the letters testamentary or of administration to be recorded in the court in which the judgment exists, after which, execution may issue and proceedings be had thereon in the name of the executor, &c., as such, in the same manner that could or might be done or had, if the judgment exists and remains in the name, &c., of the executor, &c., in his or her capacity as such executor, &c. Section 41 provides that the lien created by law on property shall not abate or cease by reason of the death of any plaintiff, but the same shall survive in favor of the executor, &c., of the testator, whose duty it shall be to have the judgment enforced in manner aforesaid. Scates' Comp. 610.

It is very manifest from these sections that these provisions are intended to meet cases where the seven years lien has not expired, and only such cases. If it was such a case, then the party did not proceed according to this statute, to enable an execution to issue in favor of the executrix. Here letters testamentary were not produced to be filed in the court where the judgment was obtained. This is the condition on which she

could obtain an execution in her fiduciary character as executrix, if a lien existed.

The appellant, however, insists, that an execution having once issued within a year and a day, an *alias* could issue at any time thereafter. Reference is made, in support of this position, to several authorities, and among them to the case of *Lampsett* v. *Whitney*, 2 Scam. 441. In that case, as a matter of fact, seven years had not elapsed between the time of the issuing of the *alias* writ of *fieri facias*, and the *pluries* writ which was sought to be quashed, and it was not necessary, therefore, to consider the effect of the act of 1825, which fixed the limit to the lien of a judgment on real estate to seven years. Sess. Laws, 1825, p. 151. The cases decided in other States to which reference is made, are presumed to have been decided in the absence of any such statute as ours and of any limitation law. By the fifth section of our limitation act, ch. 66, it is provided, that judgments in a court of record may be revived by *scire facias*, or an action of debt may be brought thereon, within twenty years next after the date of such judgment and not after. Scates' Comp. 751. This legislation would seem to imply that an execution cannot, as is contended, be issued at any time. If it could issue at any time, whence the necessity of such a provision ? The presumption is, that after the lapse of twenty years, the judgment has been extinguished, and this is rebutted only by bringing an action of debt, or suing out a writ of *scire facias;* under either of these proceedings, every legitimate defense could be made, but not under a *fi. fa.* It would be absurd to suppose the law designed to give to a *fi. fa.* more vitality than the judgment on which it issued.

The claimant under the assignment of the Demmond judgment, did not, as we have observed, pursue the requirements of section forty, nor could the executrix enforce the judgment in the mode the assignee adopted. Section forty-one provides expressly the judgment shall be enforced by the executor, in the mode pointed out in section forty, by producing for record the letters testamentary in the court wherein the judgment was rendered. Section thirty-seven of this act, was designed to

apply to cases where there was an administrator or executor of a deceased debtor, and where there was a subsisting lien. In the absence of these elements, the executrix was bound to resort to a *sci. fa.* And so of sections forty and forty-one,—they apply to the same kind of judgments the lien whereof had not expired. Such was the case of *Durham* v. *Heaton,* 28 Ill. 264.

The execution on the Demmond judgment, and all the proceedings under it, were void and of no effect, and consequently no valid title could grow up out of them.

The premises, on the expiration of the lien, became the property of the heirs-at-law, unaffected by the judgment, of which they could not be deprived by any proceeding to which they were not a party. *Turney et al.* v. *Young,* 22 Ill. 253. They were not parties to the proceedings consequent upon the Demmond judgment, and are not bound by them.

The lien of both these judgments having expired in April, 1845, as to *bona fide* purchasers and subsequent incumbrancers, what priority, if any, existed between them? In the case *Ex parte The Penn Iron Company,* 5 Cow. 540, it was held, where several judgments were of more than ten years' standing, which is the limit of judgment liens in New York, the judgments rank in relation to one another, according to their actual priority of date. To the same effect is the case of *Rogers* v. *Dickey,* decided by this court, 1 Gilm. 636. The judgment of plaintiff below being first in date, would be entitled to priority, but this point need not be discussed or decided, as in our judgment the execution and proceedings under it through which the defendant claims title are, for the reasons we have given, a nullity.

We see nothing wanting in the proceedings of the plaintiff on his judgment to make them regular.

*Judgment affirmed.*