A. S. Thomas, Appellee and Cross-Appellant, v. Roman J. Kowalewski, et al., Defendants.
On Appeal of Josephine E. Richards and K. A. Richards, Appellants and Cross-Appellees.

Gen. No. 46,799.

First District, Third Division.
December 28, 1956.
Rehearing denied February 6, 1957.
Released for publication February 6, 1957.

Franklin J. Stransky, Rathje, Kulp, Sabel & Sullivan, all of Chicago, attorneys for Josephine E. Richards and K. A. Richards, appellants and cross-appellees.

Joseph F. Elward and Edward S. Macie, both of Chicago, attorneys for A. S. Thomas, plaintiff-appellee and cross-appellant.

JUDGE KILEY delivered the opinion of the court.
This is a creditor's suit to establish a lien upon real estate, on the alternative theories of a resulting or a constructive trust, and for sale of the property in satisfaction of the judgment. The decree was in favor

of plaintiff and defendants have appealed. Plaintiff has cross appealed with respect to costs.

The real estate is at the northeast corner of 51st and Throop Streets in Chicago. It is improved with a two-story brick office and apartment building. The property was acquired by Nellie Kowalewski from the Sherman State Bank on June 3, 1925. As part of the purchase price she and her husband Roman gave back a mortgage of $20,000. On June 30, 1925, they executed a second mortgage of $25,000 naming Sherman State Bank as trustee. On July 7, 1930, a $2500 check of the R. J. Kowalewski Real Estate Company, Inc., was applied upon the first mortgage.

On February 13, 1932, suit was filed in the Superior Court to foreclose the second mortgage, and the following August 4 the holders of the first mortgage sued to foreclose. Thereupon, the earlier foreclosure suit was abandoned. The decree in the first mortgage foreclosure suit was entered June 10, 1933, finding $19,080.88 due and the mortgage a prior lien on the property and its rents, issues and profits. The holders of the mortgage purchased the property at the sale under the decree on July 6, 1933. The sale was approved January 22, 1937, and a deficiency decree entered for $1,598.69. A master's deed passed to the purchasers and there was no appeal from the decree.

In 1935 the second mortgage trust deed and note were owned and held by B. Byer and were exchanged for a note made by Nellie and Roman Kowalewski for $15,748 payable to Byer or order. Plaintiff, legal owner and holder of this note, confessed judgment in October, 1940, for $21,556.65 and costs. The instant proceeding was begun November 22, 1940, to subject the property to the satisfaction of the judgment. At the time of suit title was in defendant Josephine Richards, wife of a son of Nellie and Roman Kowalewski, having been conveyed to her in 1936 by the pur-

285

chasers at the sale under the foreclosure of the first mortgage.

Plaintiff's theory is that the conveyance to Josephine Richards created a resulting trust because it was purchased with funds of Nellie and Roman Kowalewski, or a constructive trust because it was the result of a conspiracy to hinder and defraud the creditors of Nellie and Roman Kowalewski, including plaintiff.

The record discloses that plaintiff's judgment became dormant in October, 1947, and was revived in April, 1950, by an original proceeding. At the time of revival, Nellie Kowalewski was dead.

The decree found that the conveyance to Josephine Richards was induced by her husband with funds in his hands collected as rent from the premises prior to the approval of the foreclosure sale in January, 1937; and that the conveyance resulted in a trust in favor of Nellie Kowalewski and her creditors, including plaintiff. These findings were based on a finding that the transaction was the result of an "arrangement" between Nellie Kowalewski, her son Richard, and his wife Josephine to delay and defraud the creditors and that Josephine Richards held title for the benefit of the creditors, including plaintiff. The decree ordered that plaintiff's judgment "be and is hereby declared a lien" on the property and on the legal title of Josephine Kowalewski, and that unless Richard and Josephine Kowalewski paid plaintiff $21,556.65, with interest at 5% from October 29, 1940, within thirty days, the property to be sold at public sale.

In their brief defendants pointed out that Nellie Kowalewski had died June 8, 1947, before the filing of the revival suit on February 27, 1950, that her death was not suggested nor her personal representative made a party in that suit. Her death was suggested before the master September 12, 1952, was noted in

286

the master's report, and consequently was before the chancellor.

The question is whether Nellie Kowalewski's death prior to the revival of the judgment rendered that judgment *void*.

■ Plaintiff's original judgment was entered October, 1940. The judgment was a lien upon the real estate of Nellie Kowalewski for "seven years, and no longer." (Chap. 77, Par. 1, Ill. Rev. Stat. 1953.) The lien of the judgment expired in October, 1947, and was not revived until 1950, three years after Nellie Kowalewski's death. The revival suit was an independent proceeding in which the court had no jurisdiction of her person, neither her personal representative nor her heirs at law were made parties, and the judgment of revival is accordingly void. (Claflin v. Dunne, 129 Ill. 241, 244; State Bank of Prairie du Rocher v. Brown, 263 Ill. App. 312, 315.)

Plaintiff contends, however, that the suit to revive the judgment was superfluous because the filing of the instant creditor's suit in November of 1940 created an equitable lien at that time, and that this lien was not subject to the seven year limitation of a statutory lien and was unaffected by the death of Nellie Kowalewski. He relies upon Davidson v. Burke, 143 Ill. 139, and King v. Goodwin, 130 Ill. 102.

King v. Goodwin held that "the filing of a creditor's bill, and the service of process, creates a lien on the equitable assets of the judgment debtor" and this lien is not extinguished by the death of the defendant. The case did not determine whether a lien created by the filing of a creditor's suit is subject to the seven year limitation of statutory liens, and therefore, under the view we take of the instant case, King v. Goodwin is not in point here.

■ In Davidson v. Burke the creditor's suit was filed within seven years of the judgment but the decree

declaring plaintiff's lien was entered more than eight years after the judgment. The court said: "In a case where the plaintiff has no lien on the property sought to be reached, it is the filing of the bill in equity, after the return of the execution at law, which gives to the plaintiff a specific lien." We think the court in that case treated the suit as a strict creditor's bill under the Creditor's Bill section of the then Chancery Act (Chap. 21, Par. 40, Statutes of Illinois 1869), now the discovery section of the Chancery Act (Chap. 22, Par. 49, Ill. Rev. Stat. 1953). This is plain from the court's statement that Burke's suit was not to enforce a judgment lien and therefore the question of the seven year limitation of the life of the statutory judgment lien did not arise. (Davidson v. Burke, 143 Ill. 139, 148.) This statement is not consistent with the distinction made in Rice Co. v. McJohn, 244 Ill. 264, between statutory creditors' suits and suits in aid of a legal execution, but that inconsistency need not concern us here. The statement implies that if Burke's suit had been in aid of an execution in enforcing the statutory judgment lien a live judgment would have been necessary to support the suit. What the court in Davidson implied is expressed in Newman v. Willetts, 52 Ill. 98, Weis v. Tiernan, 91 Ill. 27, and Bennett v. Stout, 98 Ill. 47. A live judgment is a prerequisite to a suit in aid of a legal execution.

██ ██ A statutory creditor's suit is designed to reach a debtor's assets which are not vulnerable to the Judgment Lien Act and cannot be reached by execution at law. (Rice Co. v. McJohn, 244 Ill. 264, 270.) Consequently, a statutory judgment lien is not a prerequisite to its effectiveness. (Bennett v. Stout, 98 Ill. 47.) But the statute requires as a prerequisite that an execution be returned nulla bona. (Chap. 22, Par. 49, Ill. Rev. Stat. 1953.) Plaintiff in the instant case did not com-

ply with this requirement but we need not discuss this defect.

When plaintiff filed his suit under the discovery section (Chap. 22, Par. 49) in November of 1940 and obtained service on defendants, an equitable lien was created in his favor. (Potter v. Couch, 141 U. S. 296; Pomeroy's Equity Jurisprudence, Vol. 4, page 1062, note to Sec. 1413 (5th ed. 1941).) But suits under this statute are analogous to garnishment suits. (Fidelity Coal Co. v. Diamond, 322 Ill. App. 229.) "The object attempted to be reached in each case is practically the same." (Addyston Pipe & Steel Co. v. City of Chicago, 170 Ill. 580, 585.) "Both an execution and the proceedings in garnishment derive their support from the main judgment. Under the decisions, if the main judgment fails, the rights acquired under the garnishment cease." (Ring v. Palmer, 309 Ill. App. 333, 337.) In Jones v. Salinger, 329 Ill. App. 177, the analogy was relied upon by this court in holding that a creditor's suit may not be brought where the judgment at law was dormant before the filing of the suit in equity. Likewise, using the analogy, it follows that if a garnishment proceeding commenced within seven years from the date of rendition of the judgment at law fails when the judgment becomes dormant during the pendency of the suit (Ring v. Palmer, 309 Ill. App. 333), a creditor's suit will also fail under the same circumstances.

Plaintiff seeks to distinguish Jones v. Salinger, 329 Ill. App. 177, on the ground that the creditor's suit in that case was not commenced until after the judgment had become dormant. The distinction is not valid, however, because equity speaks as of the time of the entry of the decree. (Dennis v. Naegele, 11 Ill.App.2d 239, 136 N.E.2d 535.) We conclude, therefore, that since the judgment here was dormant when the decree was entered, there was no support for the order of

289

sale and the decree was accordingly erroneous and must be reversed.

Logic and decisions in other jurisdictions support the analogies mentioned and require that a suit ancillary to an execution presuppose the existence of a judgment capable of supporting an execution, because the suit has as its main purpose the satisfaction of the judgment. Miller v. Melone, 11 Okla. 241, 67 Pac. 479, 482, and cases cited and quoted therein.

Our conclusion runs counter to the decision in the Davidson case upholding a decree on an unrevived judgment eleven years after its entry. We respectfully depart from that holding on authority of the Addyston case and the other cases cited, which make the analogy between creditors' suits, under the statute, and garnishment proceedings, and which apply the implications arising from the analogy in the rules they have announced.

The policy of Illinois underlying the Lien section, Chap. 77, Par. 1, and the dormant Judgment section, Chap. 77, Par. 5, of the statute is the necessity of keeping property in the stream of commerce by unfettering it after seven years where the creditor has not been diligent in protecting his right. (Riggin v. Mulligan, 9 Ill. 50; Scammon v. Swartwout, 35 Ill. 326; Tenney v. Hemenway, 53 Ill. 97.) This policy is expressed plainly and forcibly in the statute sections and cases mentioned. To sustain the Davidson decision would be to enable equity not only not to follow the law, but to override an express law policy of Illinois. We think our conclusion supports the policy.

For the reasons given, it is our opinion that the decree should be reversed and the suit dismissed for want of equity.

█ We think it is no objection to this conclusion that the question of the validity of the revival judgment was not raised at the trial. The judgment of

revival was void, and the jurisdictional fatality may be raised on this appeal from the decree necessarily resting on the void judgment. The original judgment was dormant, the defendants were unaffected by the void revival judgment, and neither it nor the original judgment supports this decree.

In view of our conclusions we need consider no other points raised on appeal or cross-appeal. For the reasons given the judgment is reversed and the cause remanded for further proceedings in accordance with the views expressed in this opinion.

Reversed and remanded.

FEINBERG, P. J. and LEWE, J., concur.