## Robert Durham *et al.*, Plaintiffs in Error, *v.* William W. Heaton, Defendant in Error.

### ERROR TO BUREAU.

All voidable process can be made perfect by amendments; void process cannot be. An execution, though issued for a much larger sum than that expressed by the judgment, can be amended by it, and parol proof by the keeper of the records may be received to show its identity.

A purchaser (other than the plaintiff) at a sale under a defective execution, will hold the property. Such an execution is amendable before or after the sale.

A stranger to a sale, under an execution, cannot collaterally question the regularity of the process.

A judgment may be revived in the name of an administrator, if he has filed his appointment for record, and execution may issue in his name.

The lien of a judgment in the Supreme Court, is coextensive with its jurisdiction. The lien of a judgment is given to all courts of record, whether of original jurisdiction or not.

The lien of a judgment is not released by the death of the judgment creditor.

THIS was an action of ejectment brought by Heaton against Durham and Ellis. Declaration in the usual form.

The land in controversy is the east half of the south-east half of the south-west quarter of Section 34, Township 18, Range 10 east of the fourth principal meridian.

Plea, general issue.

Trial by the court, and verdict for plaintiff:

Bill of exceptions shows that the following evidence was offered for plaintiff.

Certificate of the register of the land office at Springfield, showing that Oliver Lindley purchased the land in controversy of the United States on the 15th day of July, 1835.

Copy of deed from Oliver Lindley, and Priscilla, his wife, to John Lindley, for the same land, February 26, 1858. The defendants objected to the reading of the copy. The court overruled objection, and defendant excepted.

Previous to reading the copy of the deed, plaintiff read his own affidavit, in which he stated that the original deed was lost, as he was informed and believed; that said deed was not in his power to produce on trial; that said John Lindley was, and had been for some years, a resident of Knoxville, in the State of Iowa. That plaintiff applied by letter, and was informed by him that said deed was not in his possession, and had been accidentally destroyed by fire while said Lindley resided in Tazewell county, in this State.

That one other deed, made by said John Lindley to one James Barbour, for the premises in controversy, dated June 13, 1846, was a material part of his testimony in the case; that said deed is not in his power to produce on this trial. That when this suit was commenced, said James Barbour was insane, and confined in the asylum in Jacksonville; that affiant believes he is still confined there; that Martin P. Sweet, of Freeport, is a conservator of said Barbour; that affiant had applied to him for deeds aforesaid, and was informed by him that said deeds were never in his possession, and he had never seen them—said that plaintiff knew of no other person who would likely have possession of said deeds, and he had no knowledge where they are.

18

That one other deed, made by James Barbour to Tracy Reeves, dated July 23, 1846, for the premises in controversy, was a material part of testimony in this case; that said Tracy Reeves lived in said Bureau county; that plaintiff called upon said Reeves for said deed; Reeves informed him at first that he had the said deed, but has since informed plaintiff that after diligent search in all places where said deed would be likely to be found, he could not find the same, and that said deed was lost; that plaintiff himself searched the desk of said Reeves, where he was informed said deed would be found, among various packages of deeds and other papers; could not find said deed, and verily believes the same to be lost.

Plaintiff offered in evidence. a certified copy of the record of a deed from John Lindley, dated June 13, 1846, for the premises in controversy.

The plaintiff offered in evidence a certified copy of the record of the deed from James Barbour to Tracy Reeves, dated July 3, 1846, for the premises in controversy.

To the reading of which deeds the defendants objected, the court overruled objection, and the defendants excepted.

Plaintiff then read in evidence a deed for the premises in controversy, from Tracy Reeves to himself, dated July 3, 1855.

The defendants admitted the possession of the land in controversy.

Defendants read in evidence the deposition of W. A. Turney, who testified that he was clerk of the Supreme Court of the Second Grand Division; that on the records of the old Supreme Court of this State, there is a judgment in favor of William Dougherty against Oliver Lindley and Irwin B. Doolittle, a sworn copy of which was attached to the deposition, as follows:

" At a Supreme Court of the State of Illinois, begun and held at Vandalia, on Monday, the 11th day of September, A. D. 1837, to wit, on Saturday, the 16th day of December, the following judgment was entered of the record:" (Here follows a judgment in due form, in favor of William Dougherty against Oliver Lindley and Irwin B. Doolittle, for the

sum of $3,441.41, damages and costs in that court as well as in the court below, which copy of judgment was also duly certified by the clerk of said court.)

Said witness Turney further testified, that there was no other judgment on the records of said Supreme Court, between the same parties.

There is a book in my office, called an execution book, which it is supposed contains a record of all the executions issued upon judgments rendered by the old Supreme Court, and a minute of the returns made upon the execution. I find from said book that several executions were issued upon the judgment aforesaid; a copy of said record is attached, marked B, which shows execution issued on the foregoing judgment, December 26, 1837, with the following return : "Received on the within execution $200, March 31, 1838. Returned, no property found, of which the money can be made. March 26, 1838."

He also testified, that he had made diligent search for the execution, which appears by the execution book to have been issued on the 26th December, 1837, and cannot find the same in his office : believes it to be lost. There appears on page 372 of record, book G, of the record of said Supreme Court, letters of administration, of which exhibit C, hereto attached, is a copy.

Exhibit C shows letters of administration upon the estate of William Dougherty, who died intestate March 15, 1840, to Thomas Lewis, public administrator, granted by James Adams probate justice of the peace, of Sangamon county, of the State of Illinois, August 23, 1842.

Said witness further testified, that exhibit D, attached to his deposition, is a copy of the order of said court immediately preceding, and exhibit E is a copy of the entry immediately following the record of the letters of administration aforesaid. Exhibit D is as follows : " Ordered, that all causes heard and not decided, being continued under advisement, and that all other causes, motions and matters not otherwise disposed of, be continued until the next term of this court."

Exhibit E is as follows: " Monday, 12th December, 1842,

at a Supreme Court begun and held at Springfield, on Monday, the 12th day of December, in the year of our Lord one thousand eight hundred and forty-four. Present, the Hon. William Wilson, Chief Justice; Thomas C. Brown; Sidney Breese, Walter B. Scates, Samuel H. Treat, Stephen A. Douglas, John D. Caton."

Said witness further testified as follows: There is an execution with returns on and attached to it on file in my office, of which exhibit marked F, hereto attached, is a copy.

Exhibit F is a copy of an execution issued by E. Peck, clerk of the Supreme Court of the State of Illinois, on the 8th day of July, 1843, in favor of Thomas Lewis, administrator of William Dougherty, deceased, and against Oliver Lindley and Irwin B. Doolittle, for the sum of $4,113.56 damages, $14.18¾ costs, in the Circuit Court of Tazewell county, and $10.07 costs in said Supreme Court, on which is the following return:

"Received this writ at 3 o'clock, P. M., July 29, 1843.

"There is paid on this execution by the purchase of property, the sum of $1,575, as per sheriff's return attached to this writ; $20 is applied in part pay as sheriff's fee, the remainder, $1,555, is applied on the execution.

WILLIAM B. DOOLITTLE."

Attached to said execution is a levy, by Stephen Smith, upon certain real estate, including the premises in controversy, as the property of Oliver Lindley; the appointment of Richard C. Masters, James G. Forestal and Robert C. Masters, as appraisers. On the oath of the appraisers, and the valuation of property by them, the south-west quarter of Section 34 aforesaid, was appraised at $350. Said return further shows a proper advertisement of said land, and a sale of the same, on the 26th day of August, 1843, by said sheriff. The said south-west quarter of Section 34 was sold to said William B. Doolittle, for $300.

Said witness further testified, that he had diligently examined the records in his office, and could find no other judgment in favor of William Dougherty, or Thomas Lewis, administrator of William Dougherty, and against Oliver Lindley and Irwin B. Doolittle, than the one above stated; and that if

there had been any such judgment, he thinks, from his researches among the records, that he should have found it.

Defendants read in evidence, without objection, a deed from Stephen Smith, sheriff of Bureau county, Illinois, to William B. Doolittle, for the premises aforesaid, reciting the execution and sale aforesaid. Defendants read in evidence a certificate of William A. Turney, clerk of the Supreme Court of the State of Illinois, for the Second Grand Division, under the seal of said court, in which he certifies that he had examined the records of said court, and that it appears from record book E, which contains the orders, opinions and judgments of said court, that said court commenced a session at Vandalia, on Monday, December 16, 1837. The record does not show any order of adjournment at that term, but the last order entered at that term is of the date of Monday, December 25, 1837, on page 61 of said record, and is a general order of continuance for all cases undisposed of; and the next order was on page 78 of said record book E, and is the order showing the commencement of June term, 1838.

B. C. Cook, for Plaintiffs in Error.

The judgment in the Supreme Court was a lien upon the property. 3 Barbour, 36; 10 Paige, 325; 1 Barbour, 571; 6 Paige, 547; 1 Scates, 183; 2 Dallas, 158; 1 Carter, 206.

The plaintiff could not in this action take any advantage of the variance between the judgment and execution. The execution could not be attacked collaterally. 5 Johns. 100; 17 Ill. 156; 4 Wend. 462, 385; 8 Wend. 676; 5 Cowan, 529; 2 Gilm. 166; 2 Term, 737; 1 Wills. 255; 2 Sand. 46, n. 6— page 3, n. 2.

E. N. Powell, on same side, cited, 5 Johns. 100; 4 Wend. 462; 1 Cowen, 309; 4 Wend. 478; 2 Gilm. 166; 4 Scam. 371; 17 Ill. 154; 2 Porter's Ind. 252, 309; 2 Barbour, 36; 10 Paige, 325; 1 Barbour, 571; 5 Peters Cond. 502; 1 Gilm. 644; 2 Gilm. 118; 6 Paige, 457.

Leland & Blanchard, for Appellee.

If a judgment of the Supreme Court was a lien throughout

the State, the lien of the plaintiff died, when, by reason of the death of the judgment creditor Dougherty, the judgment died. Purple's Real Estate Stat. 328, 329, 338; 13 Ala. 167; 15 Ill. 337.

The act of February 9, 1841, was not retrospective. The whole act applies to future not past judgments. 2 Scam. 499; 1 Scam. 345; 7 Iredell, 59; 2 Hill, 239.

The execution was not supported by the judgment, but was materially variant from it and void; neither the judgment nor execution is the one recited in the sheriff's deed. 13 Ia. 251; 8 Iredell, 221; 7 Conn. 6; 2 Conn. 862; 1 Dev. & Bat. 586; Hanlin, 330.

It was not competent to prove by parol evidence *aliunde* that the execution was issued on the judgment. It should appear on inspection to be the same substantially. 2 Conn. 462.

BREESE, J. The solution of the question presented by this record, depends entirely upon the validity of the execution under which the land was sold, and which issued out of the Supreme Court, in favor of Lewis, Adm'r, against Lindley and Doolittle. If that execution was not void, then the title of appellants to the premises in controversy, was clearly made out.

The appellee insists that the execution is void, it being materially variant from the judgment; and that it was not competent to prove by parol, that the execution did in fact issue upon the judgment. That should appear from inspection.

The fact of variance is conceded. The judgment was recovered December 16, 1837, in favor of William Dougherty, against Oliver Lindley and Irwin B. Doolittle, in the Supreme Court of this State, for the sum of three thousand four hundred and forty-one dollars and forty-one cents. On this judgment an execution issued December 26, 1837, and duly returned in part satisfied, as appears by the deposition of William A. Turney, Esq., clerk of the Supreme Court, and having custody of the records and files of the court in which the

judgment was rendered. This deposition proves, also, the loss of this execution. Sometime in 1839, the judgment being unsatisfied, the judgment creditor died, and an administrator on his estate was duly appointed by the proper court, who, in 1841 or 1842, caused to be recorded in the Supreme Court, his letters of administration, and afterwards, on the 8th day of July, 1843, caused an execution to be issued out of said court, upon this judgment in the name of the administrator, and directed the same to the sheriff of Bureau county to execute. The sheriff of Bureau county duly levied the writ upon the land in controversy, and sold the same according to law, and executed a deed to the purchaser, through whom, it is not denied, the title is clear to the appellant. Here comes in the objection. The execution under which the levy and sale was made, recites a judgment against Lindley and Doolittle, for the sum of four thousand one hundred and thirteen dollars and fifty-six cents, fourteen dollars and eighteen and three-fourths cents costs in the Circuit Court of Tazewell county, and ten dollars and seven cents costs in the Supreme Court. A vast discrepancy between this amount, and the amount of the judgment as rendered, even with interest added. Now the question comes up, Can a stranger to the judgment and execution and to all the proceedings under it, take advantage of this variance in a collateral proceeding?

This involves the question, Is such an execution, so variant as it is from the judgment, void, or voidable only? One proposition includes the other. A void writ has no vitality, and nothing exists by which it can be amended—the breath of life cannot be infused into it, and it is a nullity. Not so with a writ voidable only. Such a writ, if a summons, can be amended by the precipe—if a *fi. fa.*, by the judgment, and all acts done under it, are valid and binding, until set aside. All voidable process can be made perfect, by proper amendments—void process cannot be. An instance of the first kind is seen in this execution, the other kind will be seen in a writ issued by a court or magistrate not having jurisdiction of the subject, or of a writ from a court of record without a seal, or where there was no judgment. It is impossible to amend such writs, they being void in the inception.

The defendant however insists, that the variance is so great as to compel the inference it did not issue on the judgment recovered, and that parol proof cannot be received to show its identity. He insists that the records of a court must prove themselves. As a general principle this is true, but where it is shown to the court by the keeper of the records of a court, that there is no other judgment on those records than the one in question, the proof is as complete as if the records were present to be inspected. The fact is so, or it is not so, and that is to be determined by the records, either by inspection or by the sworn testimony of the keeper, who has carefully examined and searched them, with a view to establishing the fact.

Can this party take advantage of this objection, he being a stranger to the proceedings? If it was raised by the debtor himself, a different question would be presented, but even as regards him, the execution would not be void, and a party, not the plaintiff in the writ, purchasing the land under the sale made under the writ, would hold the land. The process would stand good until avoided in a proper manner. The defect in it cannot be taken advantage of by any one in a collateral action; its validity was not affected by the variance; it was amendable at any time as well after as before the sale. *Jackson* v. *Anderson,* 4 Wend. 478. So in *Philips* v. *Coffee,* 17 Ill. 154, this court held that a purchaser at a sheriff's sale, who is not a party to the proceedings, having a good deed, will not be defeated in his title by any defect or irregularity; he relies upon the judgment, levy and deed; all other questions are between the parties to the judgment and the officer. A stranger to the proceedings cannot question them collaterally. *Swiggart et al.* v. *Harber,* 4 Scam. 364; *Riggs* v. *Cook,* 4 Gilm. 336. Whilst no one is bound by acts done under void process, those are binding which are done under erroneous or voidable process, and cannot be successfully assailed except by a direct proceeding to set them aside, not by "a side-wind."

The defendant, however, contends that the execution on which the sale was made, was never regularly issued from

the Supreme Court, for the reason that the judgment was never revived in that court, in favor of the administrator, and that his letters of administration were never recorded in the Supreme Court. Previous to the act of 1840, concerning judgments and executions, the only mode by which a judgment could be revived at law, against a deceased debtor, was by *scire facias,* a mode attended with great delay and expense.

The act of 1840, sec. 40, is as follows : "The collections of the judgments of courts of record shall not be delayed or hindered by the death of the plaintiff or person in whose name the judgment shall exist, but the executors or administrators, as the case may be, may cause the letters testamentary or of administration to be recorded in the court in which the judgment exists, after which execution may issue and proceedings be had thereon in the name of the executor or administrator as such, in the same manner that could or might be done or had if the judgment exists and remains in the name and favor of the executor or administrator, in his, her or their capacity as such executor or administrator." (Scates' Comp. 610.)

The clerk of the Supreme Court testified, that the record of his court showed that letters of administration upon the estate of William Dougherty, who died intestate March 15, 1840, were granted to Thomas Lewis, public administrator, by James Adams, probate justice of the peace, of Sangamon county, of the State of Illinois, August 23, 1842. This, the clerk states, is duly entered upon the records of the court, and makes an exhibit of such entry. This, it is insisted, is not a compliance with the statute—that, requiring that the letters should be recorded in the court. The language of the statute is, the administrator shall "cause them to be recorded," not that they shall have no operation until they are actually recorded. All that the administrator could do, would be to bring his letters into court, that the court may see he was no pretender, but possessed the character he claimed. It was the business of the clerk to record them, and if he failed to do it, the administrator should not suffer or

be put in peril. He presented to the court his letters of administration duly granted, the effect of which should be, as the statute contemplated, to revive the judgment in his name, with power to issue an execution in his name.

The execution was properly issued in the name of the administrator. But it is objected, that it does not recite, the execution was on a judgment obtained by William Dougherty against Lindley and Doolittle, but as a judgment recorded by Thomas Lewis, administrator of William Dougherty, and is in that respect, not identical with the judgment actually rendered in 1837. The execution would have been more formal and precise, if there had been any additional recital in it, to this effect: which William Dougherty in his lifetime recovered, etc., and which judgment has been revived in the name of Thomas Lewis, administrator, etc. But it is, as it reads, a literal compliance with section forty. Execution is to issue and proceedings be carried on after recovering the letters, in the name of the administrator. This, too, is an objection made by a stranger to the proceedings, and if valid, could not prevail in his behalf.

It is also insisted by the defendant, that the lien of this judgment rendered in 1837, did not reach beyond the county where the judgment was rendered, and could not be effectual in another county, certainly not, without levy and notice of record in the county where the lands were situate, or against a *bona fide* purchaser, whose deed was recorded prior to the levy. He further contends that our statute does not make, and did not intend to make, judgments of any court, except courts of original jurisdiction, liens upon real or other estate. Section 1, of chap. 57, title "Judgments and Executions," provides, that all and singular the goods and chattels, lands, etc., of every person against whom a judgment has been or shall be obtained in any court of record, either at law or in equity, for any debt, etc., shall be liable to be sold upon execution, etc.; and the said judgments shall be a lien on such lands, etc., from the last day of the term of the court in which the same may be rendered, for the period of seven years: *Provided*, that execution be issued at any time within one year on such judgments, etc. (Scates' Comp. 602, 603.)

We perceive no restriction to judgments of courts of original jurisdiction, but it is general to any and all courts of record, and we see no reason for such restriction.

At the common law a judgment created no lien upon the lands of a defendant. The land was made liable to satisfy the judgment under an *elegit*, a writ given by the statute of Westminster, 2, 13 Edw. I, ch. 18, and this, it has been held by the courts of England, gave a lien on the lands of the judgment debtor.

It has been the policy of our law, from our earliest history, to subject real estate to the payment of debts, and our present statute which we have cited, is nothing more than a copy of the law which was in force when this State formed a part of the territory north-west of the river Ohio, and subsequently a part of the territory of Indiana, differing, however, in this, that our present statute limits the lien to seven years.

It gives a lien upon all the lands of a defendant, on all judgments rendered in a court of record.

This provision is very sweeping and extensive, and does not in terms restrict the lien of a judgment in the Circuit Courts, to the lands lying within the county in which the court is held, and has been so restricted, only by the judicial decision, to such county. *Banvard et al.* v. *Morrison et al.*, 1 Scam. 235. The limits of the State, in the exercise of the jurisdiction of the Supreme Court, is as the limits of a county to a Circuit Court; consequently, if the lien of a judgment is limited to the county in which the court exercises its jurisdiction, so must the lien of a judgment rendered by the Supreme Court extend throughout the State, since to that extent could its jurisdiction be exercised when this judgment was rendered.

Was it not for the decision above cited, one member of the court would be inclined to hold the true test and principle to be, that the lien of a judgment should extend to all the lands of the debtor which can be reached by an execution issuing out of the court where the judgment is rendered. The jurisdiction of the Circuit Courts to enforce their judgments, extends throughout the State, as an execution can be issued to any county in the State. The lien, then, should be co-extensive with the jurisdiction. And from this no injury could result,

the judgment creditor being required to file his lien in the distant county. The Supreme Court having jurisdiction co-extensive with the limits of the State, its judgments must create a lien to the same extent.

The defendant argues against this, that great injustice might be done, by extending the lien of such judgments, as no record notice of them is required to be made in the counties where such lands may be subject to them. This can be provided against by the legislature. We can only determine what the law is, on a given state of case. It seems a necessary regulation that judgments of the Supreme Courts, to create a lien on lands in every county in the State, should be docketed in the office of the clerk of the Circuit Court of such county, which would operate as notice. In this case, the law did not require it, and no one has a right to complain, that the parties interested in recovering this judgment, took the proper steps to enforce it against property bound for its payment, although sold to a subsequent purchaser previous to the issuing of the execution. The judgment was notice of itself—the law implies notice to all subsequent incumbrancers and purchasers.

The defendant further argues, that the lien was released, if it ever existed, by the death of the judgment creditor. The statute is different. The forty-first section of the act we have referred to, provides that "The lien created by law, on property, shall not abate or cease by reason of the death of any plaintiff or plaintiffs; but the same shall survive in favor of the executor or administrator of the testator or intestate, whose duty it shall be to have the judgment enforced as aforesaid." (Scates' Comp. 610.)

We perceive no defect in the title set up by the plaintiff in error, and the issue should have been found for him upon the facts. The Circuit Court having entertained a different view, its judgment must be reversed, and a new trial had.

*Judgment reversed.*