EDWIN A. TENNEY *et al.* Administrators,

*v.*

LUKE HEMENWAY.

| 53 | 97 |
| 47a | 285 |
| 53 | 97 |
| 173 | 605 |
| 53 | 97 |
| 74a | 66 |
| 53 | 97 |
| 77a | 528 |

1. COVENANT AGAINST INCUMBRANCES—*its effect on the right to compel the payment of purchase money.* Where a vendor of real estate agrees to remove all existing incumbrances upon the premises, a failure to remove them will constitute a defense in equity against the notes given for the purchase money, to the extent of the incumbrance; and such defense will be good, even against an assignee of the notes, before maturity, he having notice thereof when he received them.

2. JUDGMENT LIEN—*its duration—whether continued in existence by the levy of an execution.* Under our statute, where an execution is issued upon a judgment within a year, the judgment will continue to be a lien upon real estate, as against subsequent purchasers, for a period of seven years after the last day of the term at which it was rendered, and no longer; and

7—53RD ILL.

a pending levy of an execution issued on the judgment, made during the existence of the lien, will not operate to continue the lien of the judgment beyond the statutory period of seven years.

3. SAME—*effect of the levy.* The levy of an execution upon land has no force in the creation of a lien, except in the single instance, where the execution is issued to a foreign county, and the certificate of levy is recorded as required by statute; with that exception, the lien, if any exists, is that of the judgment.

4. REDEMPTION—*by a junior judgment creditor.* Where a levy upon land is pending at the time of the expiration of the lien of the judgment under which the levy was made, whatever right of redemption may have existed in a junior judgment creditor by virtue of such levy, such right of redemption would cease to exist with the lien of the elder judgment.

APPEAL from the Circuit Court of Lee county; the Hon. W. W. HEATON, Judge, presiding.

The opinion states the case.

Mr. JOHN V. EUSTACE, for the appellants.

Messrs. LUSALL & CRABTREE, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a suit in equity, brought by appellants in the Circuit Court of Lee county, against appellee, to restrain the collection of certain promissory notes secured by a chattel mortgage. It appears that one Snow, being the owner of certain real estate in the town of Dixon, including a hotel known as the Nachusa House, on the first of April, 1862, entered into a contract for the sale of the same to one Aaron W. Pitts, for the sum of $7200, of which he paid in hand $1000; the sum of $200 was to be paid on the first of the following July, and the residue in semi-annual payments of $300 each. Subsequently, on the sixteenth day of April, 1862, Pitts assigned this contract, and the interest in the property he had thereby acquired, to his son, Daniel M. Pitts, for $1000, paid to him therefor.

On the third day of August, 1857, Whitney, Fenno & Co. recovered a judgment against A. W. Pitts, in the United States Circuit Court for the northern district of Illinois, for $5,313.38, upon which a *pluries* execution was issued, on the third of August, 1863, which was levied, on the sixth of that month, upon this real estate. The plaintiffs in that judgment filed a creditor's bill, which was subsequently dismissed.

On the nineteenth day of March, 1866, the United States Marshal sold this property, under the previous levy, to E. S. Smith. At the December term, 1865, of the same court, Howe, Whitaker & Co. recovered a judgment against A. W. Pitts for $3,173.50, upon which an execution was issued, on the third of February, 1866. On the twenty-eighth day of February, of that year, D. M. Pitts entered into a contract with Dorr & Appleton, to sell them the hotel and its furniture. By the agreement, the purchasers assumed the payment of $4,056, the balance of the purchase money due to Snow on the property, and it was stipulated that D. M. Pitts should "remove any legal incumbrance on said premises, shou'' any exist."

To carry this arrangement into effect, and to secure a portion of the purchase money, Dorr & Appleton, on the tenth of April, 1866, executed a chattel mortgage to secure the payment of four promissory notes, payable to D. M. Pitts, two for $1,565.16 each, and payable in twelve and eighteen months, one for $1000, and another for $564.16, payable two years from date, and all bearing ten per cent interest. The note for $1000 was not delivered to the payee, but is alleged to have been retained by a third person, to indemnify the makers against the judgment recovered by Howe, Whitaker & Co. In September, 1866, one Hewitt, having all but the $1000 note, sold them to Hemenway, and received in part payment a note on A. W. Pitts for $1,337.36, and received an assignment of the mortgage given to secure them. On this purchase he paid $2,536.18 in money. He seems to have sold them for A. W. Pitts, which he, for some reason, desired to conceal.

Dorr & Appleton subsequently sold their interest in the hotel property to C. V. Tenney, and he agreed, as a part consideration of the purchase, that he would pay the indebtedness they had incurred in their purchase from D. M. Pitts, which included the notes held by Hemenway. Dorr & Appleton claimed to have purchased the certificate of sale to Smith, and the judgment in favor of Howe, Whitaker & Co. at the sum of $3300, of which it appears, by the admission of appellee, not more than $1000 was paid.

On its maturity, Tenney paid the first note for $1,564.16, purchased by appellee, and on the bill being filed he paid into court $1,800.10, the amount of the second note, to abide the order of the court. The relief prayed by the bill was, that Hemenway be enjoined from collecting the notes, and that the sum paid for the certificate of purchase and judgment against A. W. Pitts be deducted, and the notes be canceled.

On a hearing, the court below dismissed the original bill, and, under the cross bill filed by appellee, found the amount due on the notes, and that the $1,800.10 be applied to that purpose, and that Tenney's administrators surrender the property described in the mortgage to Hemenway, out of which to make the balance, and that they pay the costs in due course of administration. To reverse this decree, the case is brought to this court by appeal.

The main question presented by this record, and upon which the case rests, is, whether the judgment in favor of Whitney, Fenno & Co. and the levy under an execution issued thereon, and its sale to Smith, or the judgment in favor of Howe, Whitaker & Co. were liens upon the property at the time the notes were assigned to appellee.

If either of them was, then D. M. Pitts was bound, under his covenant with Tenney, to remove them, and failing to do so, that could be set up as a defense in equity to their payment, if appellee had notice at the time he obtained the notes. It is not, nor can it be, controverted that the first of these judgments was a lien on the property, when A. W. Pitts sold to

Daniel M. Pitts.  The judgment was then in existence, and had been for nearly five years, and at the time he purchased the property from Snow, it attached and became binding in his hands.

And the lien then existing was followed by the levy of an execution issued on the judgment, on the sixth of August, 1863.  But no sale was made until the seven years after the date of the judgment, and the lien created thereby had ceased. It no where appears upon what day the United States Circuit Court adjourned, or the day the judgment first attached as a lien upon the lands of A. W. Pitts.  Nor is that question material, as that term of the court could not have been held beyond the convening of the next term, which occurred on the third Monday in December of that year.  The lien of the judgment, then, expired as early as in December, 1864, as the seven years expired at or before that date, and the sale of the property, and its purchase by Smith, was on the nineteenth of February, 1866, at least one year after the lien of the judgment had ceased.

It is, however, claimed that the levy of the execution upon this property, while the lien continued, operated to perpetuate the lien, even after the seven years had expired.

The lien of judgments on real estate, and the power to sell lands under execution, is regulated alone by statute.  The lien only attaches and becomes effective by force of the statute, and only in the mode, at the time, and upon the conditions and limitations imposed by it.  It receives no vigor or even aid from the common law, to which it was unknown.  The statute has not, in terms, nor has it, so far as we can see, by implication, given the same force to the levy on land under an execution, to create a lien, that arises from the rendition of a judgment.  The statute has said the latter shall create the lien, but has not said the levy may, except in case an execution is sent to a foreign county, and the levy is recorded as required. In the case of *Scammon* v. *Swartwout*, 35 Ill. 326, it was said

that the construction is, that seven years is the assigned dura-
tion of a lien on real estate, by a judgment rendered in a
court of record, and it can not be extended beyond that period.
And the case of *Riggin* v. *Mulligan*, 4 Gilman 50, places the
same construction upon the statute.

In the first of these cases it was said that, " it is absurd to
suppose the law designed to give a *fi. fa.* more vitality than
the judgment on which it issued." It is a presumption of the
common law, if an execution is not issued within a year and
a day after a judgment is rendered, that it has been satisfied;
but the presumption is not conclusive, and may be overcome
on *scire facias*, or action of debt.

It is not the policy of the law to favor secret liens, or to cre-
ate them by mere construction; and it seems clear to us, that
to hold that this levy perpetuated the lien of the judgment
beyond seven years, would be to create a lien heretofore
unknown to the law,—a lien secret in its nature, because if
the writ were not returned, the lien would still exist, although
creditors and purchasers could not have access to the source
of information. Even if an execution could issue on a judg-
ment, after the lien had expired, it would not be contended
that it would revive the lien, and attach to property previously
sold by the debtor. And to give a levy, made in the life of
the lien, operation and vigor, after the lien had expired, would
give such a levy that effect, as to the property upon which it
had been made. It is not the policy of the law to encumber
and keep property out of the commerce of the world, for
unreasonably long periods of time. It should be unfettered,
after a reasonable time, and permitted to answer its office in
serving community the purposes of its creation.

If the levy could be held to create such a result, how long
would it continue? Would it be for seven years after the levy,
or the same period of time after the lien of the judgment
expired, or until an action of debt or *scire facias* was barred
by the statute? These are all questions that would thrust

themselves upon the court for determination, and would necessarily be of no easy solution. We feel, however, clear that the levy of the execution in this case did not have the effect of prolonging the lien of the judgment beyond the period limited by the statute; and if the levy operated as a lien, that it expired with the lien of the judgment. That being so, then neither the judgment, the levy, nor the purchase by Smith, was a lien on the premises, when Tenney became a purchaser.

It is apparent that as A. W. Pitts had sold the property about two years before Howe, Whitaker & Co. recovered their judgment, it could not become a lien on it. We find no evidence that the sale to D. M. Pitts was fraudulent, nor is that ground urged in argument. And even if they, as judgment creditors, would have had the right to redeem from the levy, had it been a valid and subsisting lien, still, as it was not, they can claim no right through, or by reason of, that levy, after the termination of the lien of the judgment. As the levy depended upon the judgment under which it was made, and the right of the junior judgment creditors to redeem depended upon the levy, when the judgment lien terminated, the others came to an end with it.

It then follows that they constituted no "lien, claim or incumbrance" on the property, at the time Tenney purchased, and that it does not matter whether appellee had notice of their existence. The decree of the court below must be affirmed.

*Decree affirmed.*