DANIEL SAPP

· *v.*

MATILDA WIGHTMAN.

*Filed at Springfield March 28, 1882—Rehearing denied June Term, 1882.*

1. LIEN *of a decree—on lands in a different county.* The lien of a decree being limited by the statute in its territorial extent the same as that of a judgment at law, does not extend to lands of a defendant situate in a county other than that in which the decree was rendered, and the court rendering the decree has no power to extend its lien beyond the limits of the county, by declaring it shall be a lien on lands in such other county.*

2. SAME—*effect of section 6 of the Divorce act.* The power to make a decree for alimony a lien upon lands out of the county, is not conferred by section 6 of the Divorce act, which gives the court power to "enforce payment of alimony by causing the defendant to give security for the payment thereof, *or in any other manner* consistent with the rules and practice of the court." This implies, only, that resort may be had to the known modes under the rules of practice for enforcing writs, orders and decrees, such as sequestration, attachment for contempt, etc., or to the statutory method of creating a lien upon lands within the court's jurisdiction.

*As to the mode by which the lien can be extended to lands in another county, under the act of 1874, see *Yackle* v. *Wightman, post,* p. 169.

3. SAME—*on change of venue in suit for divorce—giving alimony in lieu of dower—effect as to extent of lien.* The fact that a suit for a divorce and alimony is brought in one county, and taken by change of venue to another, will not give the decree of the court in the latter county any more effect, as a lien upon land in the county where the bill was originally filed, than if it had been brought in the court in which the decree was entered, nor will the fact that alimony is decreed to be taken in satisfaction of dower, make any difference as to the lien of the decree.

3. NOTICE—*lis pendens—as to lands.* The commencement and pendency of a bill for divorce, which merely sets forth the defendant's lands as affecting the amount of alimony to be allowed, but asserts and seeks no right in respect to them, is no notice *lis pendens* to affect the rights of purchasers from the defendant.

APPEAL from the Circuit Court of Tazewell county; the Hon. N. M. LAWS, Judge, presiding.

This was a suit in ejectment, brought by Matilda Wightman, against Daniel Sapp and Oliver Goodwin, in the circuit court of Tazewell county, to the September term, 1881, to recover possession of the west half of the south-west quarter of section 24, town 24 north, range 6 west of the third principal meridian, in Tazewell county, Illinois, wherein the plaintiff, on trial by the court without a jury, recovered, and the defendant Sapp appealed.

It was admitted by the parties to the suit, upon the trial, that John Wightman owned the land in controversy in fee simple on March 22, 1859. Appellee, Matilda Wightman, to recover in the action, relied entirely upon a title she claimed to have derived by conveyance of the premises, from the master in chancery of Tazewell county, to her, as the assignee of a purchaser of the same at a sale thereof, made by such master under a decree rendered by the circuit court of Peoria county, Illinois, on March 22, 1859, in a suit for a divorce, brought by her against her husband, said John Wightman. The sale was made by said master on November 22, 1879, upon the affidavit of Matilda Wightman, presented to him, in which it was stated that eight semi-annual

installments of alimony, of $250 each, for the years 1876, 1877, 1878, and 1879, due on the first days of January and July of each of said years by the provisions of said decree, from said John Wightman, were unpaid, and requesting the master to collect the same.

At the sale one James Haines, Jr., bid off the premises in controversy, and the north-east quarter of section 25, town 25, range 5 west, all situated in Tazewell county, for $2327.10, and it is recited in the deed that Haines had assigned the certificate of sale from the master to Matilda Wightman, who, on February 26, 1881, received the master's deed purporting to convey to her the premises in controversy and the quarter section of land. The decree of the Peoria county circuit court was rendered in a suit for a divorce, commenced in the Tazewell county circuit court on June 16, 1858, by Matilda Wightman against John Wightman, which suit was removed by change of venue to the circuit court for Peoria county. The decree provides that $500 per annum be allowed as alimony to the complainant, Matilda Wightman, in installments of $250 each, to be paid on the first day of January and the first day of July in each year, commencing January 1, 1860, and payable at the expiration of every six months thereafter during her natural life, the decree declaring that it was made a specific lien upon the premises in controversy and certain other designated tracts of land, all in Tazewell county, and that in the event of defendant failing to pay the complainant any part of said sum of money in the manner and at the time mentioned in the decree, then the master in chancery of Tazewell county was ordered, on the application of complainant, stating the fact of such failure by affidavit, to proceed to advertise and sell the tracts of land described in the decree, or any part thereof, to the highest bidder, for cash in hand, to raise the amount which might be then due the complainant as alimony, and to make sale in like manner from time to time afterward upon like default of payment. It was

ordered that the decree be recorded in Tazewell county, and that from and after its rendition the defendant be enjoined from selling or conveying said lands, except subject to the lien thereby created upon the same. This decree, rendered March 22, 1859, was recorded March 24, 1859, in the book of record of deeds, in the recorder's office of Tazewell county. The master's deed to Matilda Wightman, dated February 26, 1881, was recorded in such office February 28, 1881.

As evidence of legal title in fee in himself, Daniel Sapp introduced a deed from John Wightman and wife to William Wightman, conveying to the latter the premises in controversy, dated March 21, 1866, and recorded March 9, 1867, and a deed from William Wightman and wife, conveying the premises to him (Sapp), dated January 5, 1867, and recorded March 8, 1867.

Mr. N. W. GREEN, and Mr. WM. DON MAUS, for the appellant:

The decree of the Peoria circuit court, in March, 1859, for the payment of money as alimony, was not a lien upon the lands of the defendant therein in Tazewell county, it being by the law then in force subject to the same restrictions as judgments at law. Chancery Code, 1845, sec. 14; *Eames et al.* v. *Germania Turnverein,* 74 Ill. 56.

The lien of a judgment of the circuit court extends only to lands within its jurisdiction, and not to lands beyond the county in which such judgment is rendered. *Bustard* v. *Morrison,* 1 Scam. 236; *Durham* v. *Heaton,* 28 Ill. 264; *Kinney et. al.* v. *Knoebel et al.* 51 id. 119; *Ewing et al.* v. *Ainsworth,* 53 id. 465; *Hart* v. *Wingart,* 83 id. 282.

It is the levy of an execution, not the judgment or decree, that creates the lien on land in another county. *Cornwell* v. *Watkins,* 71 Ill. 492; *Worcester Nat. Bank* v. *Cheeney,* 87 id. 607.

Messrs. PRETTYMAN & SONS, for the appellee:

The assignee of a judgment debtor, or one subject to a lien for alimony, takes the land as the debtor had it, and the lien may be enforced against the property in his hands the same as against the lien debtor. *Kruse* v. *Scripps*, 11 Ill. 90; *Yates* v. *Benard*, 38 id. 297.

On the sale of land under a decree which is made a specific lien thereon, and its purchase and conveyance to the lien-holder, the lien is merged in the fee, and the purchaser is entitled to recover against the debtor, or any person purchasing from him since the creation of the lien. *Talcott* v. *Draper*, 61 Ill. 56; *Prescott* v. *Fisher*, 22 id. 390; *Carroll* v. *Pollard*, 24 id. 20; 1 Washburn on Real Estate, 65.

The statutes then in force authorized the courts in granting a divorce to create liens upon real estate for installments of alimony. Acts 1859, p. 48, incorporated in Rev. Stat. 1874, p. 422, chap. 40, secs. 18, 20; Rev. Stat. 1874, chap. 22, sec. 45, and chap. 41, secs. 39, 40; *Foote* v. *Foote*, 22 Ill. 429.

That the pendency of a bill for divorce and alimony is notice *lis pendens* of the equities of the complainant to any subsequent purchaser from the defendant: *Vanzant* v. *Vanzant*, 23 Ill. 543; *Errissman* v. *Errissman*, 25 id. 138; *Armstrong* v. *Armstrong*, 35 id. 109; *Draper* v. *Draper*, 68 id. 18.

A decree on change of venue may be filed in the county from which the venue is taken, with the clerk of the court from which the venue is changed, and from the date of such filing it will have the same effect as if originally entered there. Rev. Stat. 1874, chap. 146, sec. 34.

An execution is not necessary to be issued on a decree which authorizes the master to sell, to make the decree a lien. The decree is authority to the master. *Karns* v. *Harper*, 48 Ill. 527; *Dinet* v. *Eigenman*, 80 id. 274; *Amsby* v. *People*, 20 id. 159; Rev. Stat. 1874, chap. 40, secs. 17, 18, 20, and chap. 22, secs. 45, 47.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The validity of plaintiff's title depends upon the force and effect of the decree rendered in the circuit court of Peoria county on March 22, 1859, as being a lien upon this land in Tazewell county. If it was not a lien upon such land situated in another county than that in which the decree was rendered, then the deed from John Wightman to William Wightman, of March 21, 1866, conveyed to the latter the full title to the land, unincumbered by any lien of the decree, and there was no interest left in the land for the master's deed to the plaintiff, of February 26, 1881, to operate upon and convey. Was, then, the decree a lien upon this land in another county?

The law in force at the time the decree was rendered was: "A decree for money shall be a lien on the lands and tenements of the party against whom it is entered, to the same extent and under the same limitation as a judgment at law." Rev. Stat. 1845, p. 95, sec. 14. And by sec. 45, p. 98: "All decrees given in causes in equity in this State shall be a lien on all real estate respecting which such decrees shall be made, and whenever, by any decree, any party in a suit in equity shall be required to perform any act other than the payment of money, or to refrain from performing any act, the court may in such decree order that the same shall be a lien upon the real or personal estate, or both, of such party, until such decree shall be fully complied with, and such lien shall have the same force and effect, and be subject to the same limitations and restrictions, as judgments at law." As to the lien of judgments at law the provision was: "All and singular the lands, tenements and real estate of any person against whom any judgment has been or hereafter shall be obtained, either at law or in equity, shall be liable to be sold upon execution to be issued upon such judgment, etc., and the said judgment shall be a lien on such lands, tenements and real estate from the last day of the term of court in which the same may be rendered, for the period of seven

years: *Provided*, that execution be issued at any time within one year on such judgment," etc. Same, p. 300, sec. 1. And as to a writ of attachment, or a writ of execution, issued from the circuit court of one county to any sheriff or other officer of another county, it was provided, that it should be the duty of the officer making such levy to make a certificate thereof, and file the same in the recorder's office of the county where such real estate was situated, and that until the filing of such certificate such levy should not take effect as to creditors, or *bona fide* purchasers without notice. Same, p. 305, sec. 25. And by section 27 it is provided that the certificate shall be recorded in a book to be kept for that purpose.

It will thus be seen that by statute a decree for money is made a lien on lands to the same extent, and under the same limitation, as a judgment at law, and that when, in a cause in equity, the court, in its decree, orders that the same shall be a lien upon real estate, the lien shall have the same force and effect, and be subject to the same limitations and restrictions, as judgments at law.

Although the lien of a judgment is given by the statute, in terms the most general, against "all and singular the lands, tenements and real estate" of the judgment debtor, the lien has ever been held by the decisions of this court to be limited in extent to the territorial jurisdiction of the court rendering the judgment. Thus, in *Bustard* v. *Morrison*, 1 Scam. 236, the court say: "The statute makes judgments of the circuit court a lien upon all the lands of the defendant within its jurisdiction. * * * The judgment of a court creates no lien upon land beyond the limit of its jurisdiction, to-wit, the county in which such judgment is rendered." In *Kinney* v. *Knoebel*, 51 Ill. 119, it is said: "It is the settled law of this court that the lien of a judgment upon real estate is only co-extensive with the limits of the county in which it is rendered," and see *Durham* v. *Heaton*, 28 Ill. 264; *Ewing* v. *Ainsworth*, 53 Ill. 465.

The only way, under the statute then in force, of obtaining a lien upon land in Tazewell county under a judgment in the circuit court of Peoria county, would have been by the levy of an execution upon the judgment, and filing a certificate of the same in the recorder's office of Tazewell county, and it is the levy of execution, not the judgment or decree, that creates the lien in such case on land in another county. *Tenney* v. *Hemenway*, 53 Ill. 97. The case declares it not the policy of the law to favor secret liens.

The lien of a judgment, then, of the circuit court of a county not extending beyond the boundary of the county, and the lien of a decree for money, or for the performance of any act other than the payment of money, being by the statute limited in its extent the same as the lien of a judgment at law, (*Eames* v. *Germania Turnverein*, 74 Ill. 56,) it follows that the decree of the circuit court of Peoria county was no lien upon lands in Tazewell county. That court had no power to extend the lien of a decree beyond the territorial boundary to which it was limited by law, and by declaration to that effect make its decree a lien upon lands situated in another county. The liens created by judgments and decrees of the circuit courts in this State are purely statutory. *Tenney* v. *Hemenway, supra*. The power can not be derived, as is supposed, from section 6 of the chapter entitled "Divorces," Rev. Stat. 1845, p. 197, sec. 6, giving to circuit courts the power to "enforce payment of alimony by causing the defendant to give security for the payment thereof, or in any other manner consistent with the rules and practice of the court." This general power means no more than that resort may be had to the known modes, under the rules and practice of the court of chancery, of enforcing obedience to writs, orders and decrees, as, sequestration, attachment for contempt, etc., or the statutory method of creating a lien on lands within the court's jurisdiction. It does not authorize the creating of a lien upon real estate outside of the ter-

ritorial jurisdiction of the court. That would be in contravention of the express terms of the statute that the lien of decrees shall be of the same extent, and subject to the same limitations and restrictions, as that of judgments at law.

A very proper mode of security of payment in this case would have been as suggested with reference to alimony made a lien on land, in *Errissman* v. *Errissman*, 25 Ill. 136: "And for the purpose of giving notice of the lien, it would have been proper to have required a mortgage to be given for the payment."

The bill in the divorce suit set forth that the defendant was the owner of the premises in controversy, and various other specifically described tracts of land in Tazewell county and other counties in the State; that said lands and defendant's personal property were worth $50,000. The bill prayed for a divorce and alimony. The decree ordered that the alimony allowed by it should be in satisfaction of dower.

It is urged by appellee's counsel that the decree ought to create the lien it professes to do, because the alimony is given in lieu of dower, and that the defendant had no power, by taking a change of venue, to deprive the complainant of any equity or right in the premises to which she would have been entitled had there been no change of venue, and that purchasers of the land after the rendition of the decree should stand affected in their rights by the decree as from the time of the commencement of the suit, after the manner that *pendente lite* purchasers are affected in their rights from the time of the service of the subpœna in a suit. Had the bill here set up some specific claim of right in this land, and the decree established it, we need not say what might have been the effect of the decree in the respect suggested. But there is no such case here. Although the lands are named in the bill, no right is asserted in respect to them, nor are they, or any part of them, asked to be assigned for alimony, or any other relief asked in regard to them,—they are men-

tioned for the apparent purpose of showing the amount of defendant's property, as bearing upon the sum to be allowed for alimony. The decree allows as alimony a sum of money,—$500 a year,—and orders merely that the decree shall be a lien upon the lands as security for the payment of the alimony. Where land is no more involved than this in a legal proceeding, the commencement or pendency of the suit furnishes no notice to affect the rights of purchasers. We do not see that the circumstance that the suit for divorce was commenced in the circuit court of Tazewell county, and taken by change of venue to the Peoria county circuit court, gives to the decree of the latter court any more effect as a lien upon land in Tazewell county than it would have had if the suit had been originally instituted in the circuit court of Peoria county. Nor do we perceive that the alimony being decreed to be in satisfaction of dower, makes any difference as to the lien of the decree.

There is now a statute which meets such a case as that of plaintiff, it providing that where there has been a judgment or decree in any civil case in which the venue has been changed, a transcript of the judgment or decree may be filed in the office of the clerk of the court where the suit was instituted, and that the clerk shall enter the same in his judgment docket, and execution may issue thereon, and the same shall, from the filing of such transcript, have the same operation and effect as if originally recovered in such court. Rev. Stat. 1874, p. 1097, sec. 34. But this statute was too late to help the case of plaintiff, the passage of the statute being in 1874, and the rendition of the decree in 1859, and the sale and conveyance by John Wightman to William Wightman in 1866.

The judgment of the circuit court is reversed and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE SCOTT dissenting.