Joseph C. Todd et al., v. David Todd et al. David Adler & Sons (Intervening Petitioner), Appellant, v. Edith R. Arthur (Intervening Petitioner), Appellee.

1. JUDGMENT, § 549*—*when lien lost by failure to issue execution.* Where a judgment was rendered in one county, and no execution issued to the county of the rendition of the judgment within one year, but execution issued within that time to another county, the lien of the judgment was lost as to property in the county of rendition, by failure to have the execution issue to that county within the year.

2. JUDGMENT, § 570*—*when judgment creditor not entitled to equitable consideration as against another judgment.* A creditor intervening in a partition suit who had a judgment for $6,338.68, and had redeemed from a prior execution and obtained title to the land at a profit of $7,385.18, and who in addition had received $568.65 on a first execution issued by her, and $825.32 from the master in chancery, making a total of $8,779.15 in excess of principal and interest due her, and only credited the judgment with the total of $1,393.97 obtained on her first execution and from the master, and still claimed a balance of $4,944.71 on her judgment, did not make a case entitling her to any equitable consideration as against another judgment creditor who had received nothing on his judgment.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

3. JUDGMENT, § 549*—*within what time execution must issue.* Under the statute relating to liens of judgments on real estate, Hurd's Rev. St. ch. 77, sec. 1, providing that a judgment shall be a lien on real estate within the county for which the court is held, from the time the same is rendered, and that if execution is not issued in one year from the time the same becomes a lien, it shall thereafter cease to be a lien, the legislature, in using the expression "from the time the same becomes a lien," referred to the "time the same is rendered"; and therefore an execution must issue within one year from the date of judgment to continue the judgment lien seven years on real estate of the judgment debtor located in the county in which the judgment was rendered.

4. JUDGMENT, § 564*—*how lien obtained on land in foreign county.* The statute has not, in terms nor by implication, given the same force to the levy on land under an execution, to create a lien, that arises from the rendition of the judgment; and the only way of obtaining a lien on land in a foreign county, under a judgment rendered in another county, would be by the levy of an execution and filing a certificate of the same in the foreign county; and in such case it is the levy of the execution, not the judgment or decree, that creates the lien in the foreign county.

5. JUDGMENT, § 570*—*what order of priority of judgment creditors.* The better rule, and the one more in accordance with the established principles of equity, is to give each complainant, in several successive creditors' bills against the same defendant, priority over all creditors whose debts have not been reduced to judgment, and priority among themselves in the order of the time of filing of their respective bills.

Appeal from the Circuit Court of DeWitt county; the Hon. GEORGE A. SENTEL, Judge, presiding. Heard in this court at the April term, 1918. Reversed and remanded with directions. Opinion filed April 29, 1919.

DEWITT C. CORLEY, for appellant.

BALDWIN & CAREY, for appellee.

MR. JUSTICE WAGGONER delivered the opinion of the court.

James S. Todd died intestate July 11, 1916, leaving as one of his heirs, Anna M. Rybolt, who inherited an

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

undivided one-seventh of his real estate in DeWitt county, Illinois. A suit to partition the real estate was filed July 19, 1916, in the circuit court of DeWitt county. On December 2, 1916, decree for sale was entered, and a sale was made by the master in chancery on January 6, 1917. An intervening petition was filed by David Adler & Sons on January 8, 1917. Edith R. Arthur filed an intervening petition on January 12, 1917. No report of sale had been filed when the intervening petitions were filed. The share of Anna M. Rybolt amounted to $3,925.32, and by agreement $825.32 was paid to Edith R. Arthur, and the residue, amounting to $3,100, is claimed by both intervening petitioners.

Edith R. Arthur is a daughter of Anna M. Rybolt. She procured a judgment against her mother on October 7, 1915, in DeWitt county, for $6,338.68. On the same day execution was issued to Macon county, levied on personalty and $568.65 was realized and credited on the judgment. A second execution was issued on November 18, 1916, to Macon county, under which certain lands in Macon county were redeemed from a prior execution sale to Wilson Brothers, resold and brought the redemption money only, $614.82; this land was worth $16,000 and was subject to an $8,000 mortgage. Edith R. Arthur obtained a deed, so the transaction netted her a profit of the difference between $16,000 and $8,614.82, or $7,385.18. Edith R. Arthur has in fact received on her judgment $568.65 on the first execution, $7,385.18 profit on the redemption of the real estate, and $825.32 from the master in chancery, making $8,779.15, which is in excess of the principal and interest due on the judgment. The only credits appearing are $568.65 and $825.32, or a total of $1,393.97, so Edith R. Arthur still claims a balance due on the judgment of the difference between $6,338.68 and $1,393.97, or $4,944.71. On January 12, 1917,

Edith R. Arthur had a third execution issued on her judgment. This was the first execution issued to Dewitt county and was issued more than fifteen months after the judgment was rendered. On January 12, 1917, Edith R. Arthur procured from Anna M. Rybolt an assignment of all right, title and interest in and to the estate of James S. Todd for one dollar and "other good and valuable consideration." On the same day Edith R. Arthur filed an intervening petition in the partition suit.

David Adler & Sons obtained judgment in the circuit court of Macon county on November 8, 1915, for $2,695.05 against Anna M. Rybolt. On the same day execution was issued to the sheriff of Macon county, and was returned February 5, 1916, no property found. On January 8, 1917, a second execution was issued to Dewitt county, but no levy was made or certificate of levy filed. On the same day, January 8, 1917 a transcript of the judgment was filed in Dewitt county, but no execution was issued on this transcript. The intervening petition was filed as above noted by David Adler & Sons on January 8, 1917.

The appellee, Edith R. Arthur, in her brief says:

"The appellee herein has filed her intervening petition under sections 14 and 15 of the Partition Act, claiming that she was a judgment creditor having a lien on the interest of Anna Todd Rybolt in the lands of James S. Todd, deceased, and by her intervening petition, or bill of interpleader, she sets up those rights and asks the court to recognize and declare her lien upon those lands."

The master in chancery found (and the circuit court approved his finding) that the execution issued October 7, 1915, to Macon county made the judgment of Edith Arthur obtained in Dewitt county a lien on any lands that the judgment debtor, Anna M. Rybolt, might own in Dewitt county for a period of seven years, and that it was not necessary for an execution

to issue to the sheriff of Dewitt county to make the judgment a lien on the land owned by the judgment debtor in Dewitt county.

Section 1, of chapter 77, Hurd's Rev. St., provides: "A judgment of a court of record shall be a lien on the real estate of the person against whom it is obtained situated within the county for which the court is held, from the time the same is rendered or revived for the period of seven years and no longer: *Provided,* that there shall be no priority of the lien of one judgment over that of another rendered at the same term of court, or on the same day in vacation; and upon filing in the office of the clerk of any court of record in any county in this State, of a transcript of a judgment or decree rendered in any other county of this State, such judgment shall have the like force and effect, and shall be a lien upon the real estate of the party against whom the same is obtained in said county where filed, and execution may issue thereon in said county, in like manner as in the county where originally obtained. When execution is not issued on a judgment within one year from the time the same becomes a lien, it shall thereafter cease to be a lien, but execution may issue upon such judgment at any time within said seven years, and shall become a lien on such real estate from the time it shall be delivered to the sheriff, or other proper officer, to be executed."

Sections 4 and 34, same chapter, provide for executions to "any county," and that in such case a certificate of levy shall be filed, and, until filed, such levy shall not take effect as against creditors and bona fide purchasers without notice.

By the statute a judgment "shall be a lien on the real estate of the person against whom it is obtained situated within the county for which the court is held, *from the time the same is rendered.*" If execution is not issued in one year "from the time the same be-

comes a lien," it shall cease to be a lien. It is obvious that when the legislature used the expression "from the time the same becomes a lien" they referred to the "time the same is rendered." Therefore an execution must issue within one year from the date of the judgment to continue the judgment lien seven years on real estate of the judgment debtor located in the county in which the judgment was rendered.

At the common law, a judgment created no lien upon the lands of a defendant. *Durham v. Heaton,* 28 Ill. 264 (275). The lien of judgments on real estate and the power to sell lands under execution are regulated alone by statute. The lien only attaches and becomes effective by force of the statute, and only in the mode, at the time, and upon the conditions and limitations imposed by it. It receives no vigor or even aid from the common law, to which it was unknown. The statute has not, in terms, nor so far as we can see, by implication, given the same force to the levy on land under an execution, to create a lien, that arises from the rendition of a judgment. The statute has said the latter shall create the lien, but has not said the levy may, except in case an execution is sent to a foreign county, and the levy is recorded as required. *Tenney v. Hemenway,* 53 Ill. 97 (101); *Hall v. Gould,* 79 Ill. 16 (22). It was said in *Sapp v. Wightman,* 103 Ill. 150 (157): "The only way, under the statute then in force, of obtaining a lien upon land in Tazewell county under a judgment in the circuit court of Peoria county, would have been by the levy of an execution upon the judgment, and filing a certificate of the same in the recorder's office of Tazewell county, and it is the levy of the execution, not the judgment or decree, that creates the lien in such case on land in another county."

There is therefore a distinction between the judgment lien created by section 1 of the Statute and the execution lien created by issuing an execution to a

foreign county, and filing a certificate of levy under sections 4 and 34 of the statute. Under section 1, the judgment ceases to be a lien at the end of one year when execution is not issued within the year to the sheriff of the county, wherein the judgment was rendered. "Where no execution is issued within one year from the entry of judgment, the same ceases to be a lien. Still an execution may be sued out at any time within seven years, and in such case the execution becomes a lien upon land from the time it is delivered to the officer to be executed." *Dobbins v. First Nat. Bank of Peoria,* 112 Ill. 553 (560). It was therefore necessary, in order that the judgment of Edith R. Arthur become a lien for seven years, that an execution issue within one year from its date to the sheriff of Dewitt county. The first execution to the sheriff of Dewitt county was issued more than fifteen months after the date of the judgment. Therefore the judgment of Edith R. Arthur ceased to be a lien at the expiration of one year from its date. The judgment of Edith R. Arthur having ceased to be a lien, the question remaining is with reference to the priority of rights of the intervening petitioners under their petitions.

The appellee concedes that appellant has filed its intervening petition under section 49 of the Chancery Act on the theory that appellant has exhausted its remedy at law and there was no property subject to execution of the said Anna M. Rybolt out of which it could satisfy its debt, and therefore it has the right to ask for the aid of a court of equity for an equitable lien upon equitable assets not subject to execution.

The appellant filed its intervening petition on January 8, 1917, four days prior to the filing of the intervening petition by the appellee, Edith R. Arthur, on January 12, 1917. The better rule, and the one more in accordance with the established principles of equity,

is, to give to each complainant, in several successive creditors' bills against the same defendant, priority over all creditors whose debts have not been reduced to judgment, and priority among themselves in the order of the time of the filing of their respective bills. *Russell v. Chicago Trust & Savings Bank*, 139 Ill. 538 (550); *Young v. Clapp*, 147 Ill. 176 (188).

The appellee, Edith R. Arthur, having received more on her judgment than is due her does not make a case that entitles her to any equitable consideration. The equities of this case are clearly with Adler & Sons. Edith R. Arthur's judgment having ceased to be a lien at the expiration of one year from its date, and no execution having been issued within said year to the sheriff of Dewitt county in which the judgment was rendered, and Adler & Sons having filed their intervening petition four days before Edith R. Arthur filed her intervening petition, it was error in the circuit court to enter a decree giving Edith R. Arthur a priority over Adler & Sons in the distribution of the $3,100 in question. A decree should have been entered giving Adler & Sons priority. The cause is, therefore, reversed and remanded with directions to enter the decree in favor of Adler & Sons above indicated.

*Reversed and remanded with directions.*