## AMOS T. HALL

### *v.*

## JOHN S. GOULD *et al.*

1. TRUST DEED—*disposition of surplus of proceeds of sale.* The maker of a trust deed to secure an indebtedness may provide for any disposition of the surplus of the proceeds of a sale under it, after paying the debt, that he chooses, so that creditors are not defrauded.

2. Where a deed of trust authorizes the trustee to sell the land and pay costs, commissions, liens on the land, etc., as well as the particular debt secured, he is authorized to pay, out of the proceeds of the sale, any judgment which may be a lien on the land at the time of the sale, whether it existed at the time the deed was executed or not, and the owner of such judgment can subject any surplus in the hands of the trustee to its payment, after the particular debt secured by the deed of trust is paid.

3. Where a deed of trust is given upon several tracts of land, to secure a specified indebtedness, and the trustee is authorized to sell the land and pay the particular debt, and also all costs, commissions and liens on the land, and the holder of the particular indebtedness purchases a judgment rendered against the maker after the execution of the deed of trust, which is a lien upon the land, the authority of the trustee is not exhausted when he has sold enough of the land to pay the particular debt, but he may sell enough to pay the judgment also, provided the judgment is a *bona fide* debt.

4. LIEN—*under attachment from foreign county.* A levy on real estate of an attachment from another county does not become a lien until a certificate of the levy is duly filed in the office of the recorder of the county in which the land is situated.

5. Where an attachment from another county was levied on land the day before it was sold under a deed of trust, but the certificate of levy was not filed until after the sale, the attachment did not become a lien on the land, notwithstanding notice thereof was given at the sale.

APPEAL from the Circuit Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding.

Mr. B. F. PARKS, and Mr. R. G. MONTONY, for the appellant.

Mr. GEORGE F. BAILEY, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that appellee Gould, on the 3d of September, 1865, loaned to appellee Ware $1000, and received from him a trust deed to secure its payment, with interest, on 240 acres of land.    It was recorded February 10th, 1866.    Gould also loaned Ware, on the 6th day of September, 1867. $6950. due in five years, with interest. and Ware gave to Gould a trust deed on 620 acres of land to secure its payment, with accruing interest.    These were loans of money belonging to appellee Noble, and made by Gould, who was his agent and attorney in fact for loaning and collecting money and the transaction of business relating thereto.

The deeds of trust contained a provision. that if default should be made in the payment of the interest, or any part thereof, when due, the creditor might elect to treat the entire debt as due, and require the trustee to sell the land as therein provided.    They also contained this provision : "And out of the proceeds of such sale. after first paying all costs of advertising, sale, commissions, and other expenses of this trust, including all money advanced for insurance, taxes. assessments, or liens of any kind, on said premises, with interest thereon, at ten per cent per annum, to pay the amount of principal and interest which shall appear by said notes to be unpaid at the time of such sale."

On the 24th of May, 1869, Gould purchased a judgment in favor of one Gilmore, for the benefit of Noble, and paid for it near the sum of $6,000.    An execution on this judgment had been issued and levied on these lands in December, 1867.

Default having been made in the payment of interest, on the 27th day of May, 1869, the trustee, after advertising these lands for sale on that day, offered and sold them, in 40-acre tracts, at an average of near $24 per acre.    The east half of section 11 being thus sold, brought $10,050, being something more than $31 per acre.    The land on section 10, being 380

acres, sold in the aggregate for $4840, nearly $13 per acre. The proceeds of this sale, being in the aggregate $14,890, were applied to the money due Noble on the notes secured by the trust deeds and the amount due on the Gilmore judgment, which were claimed at that time to have aggregated $16,000, or near that sum.

On the 7th of February, 1868, Ware borrowed of Gould $2200, money belonging to his wife, having been inherited from her father, and to secure that sum and a note for $800, held by one Shumway against Ware, he gave a trust deed on a fraction of a quarter of land claimed to contain 149 acres, and a small fraction in the south-east quarter of section 9, but which in fact contained but a trifle over $63\frac{1}{2}$ acres. The Shumway note was subsequently purchased for the benefit of Mrs. Gould. On default in payment of interest, and in pursuance to the terms of the trust deed, the trustee sold this land, and, without knowing it was short in quantity, or that it was worth much less in value than represented by Ware, it was purchased in satisfaction of the debt, interest, and costs, on the 19th of May, 1869. But the title to this land is not impeached or in controversy.

Previous to the day of sale to satisfy Noble's debts, Gould, in his own right, purchased from one Cook a sheriff's certificate of purchase of the south-west quarter of section 35, at somewhere near $600, and received a sheriff's deed as assignee on the 24th of June, 1869, and in the following September he sold this quarter for $6000.

It also appears that Gould became the purchaser of Ware's personal property on the farm, at $3868.80, a few days after the sale to satisfy Noble's debt, and appellees claim this was purchased to cover a balance of indebtedness, and to make up a loss on the purchase of the land, in satisfaction of Mrs. Gould's debt, which had fallen short more than 90 acres in quantity.

Ware, subsequently to the sale and purchase of the land, quit-claimed the same to Noble, thus ratifying the sale, and

removing all question as to its regularity, so far as could be done by his conveyance.

It also appears that appellant, on the day of sale under Noble's trust deed, gave notice that he had a suit pending against Ware for a large sum of money ; that he had sued out an attachment in aid of the suit, and that he had it levied on the land, claiming that the deeds of trust were fraudulent and void, and made to hinder and delay creditors; and he forbade the sale. A certificate of the levy of this attachment was filed in the proper office on the 31st of May, 1869, four days after the sale. Appellant afterwards filed the bill in this case, charging that Gould and wife, Noble and Ware had entered into a conspiracy to hinder, delay and defraud complainant in the collection of his debt, and in carrying out their scheme had contrived and used these deeds of trust and the sale for this purpose. And on the hearing the above facts were shown. The court below, however, denied the relief and dismissed the bill. Complainant brings the record to this court and assigns errors thereon. .

Appellant having failed to show that the indebtedness and deeds of trust were fraudulent, he of course does not urge that view of the case, nor can it be insisted upon, as the proofs show the transaction, to that extent at least, *bona fide.* The debts are shown to be honest and unpaid when the sale was made. But appellant urges that, notwithstanding the debts and trust deeds were *bona fide,* still Gould and Ware, with a secret understanding that Ware was to have an interest in the property after it was sold, used the deeds of trust to make sale of the property at a great sacrifice, and to be bid in by Noble on a secret trust for the benefit of Ware, over and above the payment of these trust debts ; and that the home farm, as it is called, should be held liable to appellant's debt. Also, that the sale of the first seven 40-acre tracts satisfied the trust debts, and the sale of the remaining lands was void, for the want of power in the trustee to make the sale, and that on an accounting it will

appear that Noble has received property enough to pay his debts, independent of the home farm.

No claim is asserted to the land purchased by Mrs. Gould. Proof in regard to it seems only to have been introduced as tending to show the nature of the transaction, and as establishing the charge of fraud in the trustee's sale. Her title to this land is not in question in this case.

Before proceeding to the discussion of the main question in the case, we shall dispose of the quarter on section 35, the title to which Gould, in his own right and for his own use, acquired by paying for and obtaining an assignment of the sheriff's certificate of purchase to Cook, and his sheriff's deed thereunder. It will be remembered that this quarter was not embraced in any of the deeds of trust, nor did complainant ever acquire any lien upon it. It had been sold under a judgment, the validity of which is not questioned, and purchased by the judgment creditor. The time for the debtor to redeem was about expiring, and Gould became the purchaser from the holder of the certificate, so far as this record discloses, in good faith and for his own use.

When Gould thus obtained the deed, he was the absolute owner of the land. It had not been redeemed by Ware, nor by any judgment creditor, and as complainant has failed to show that this land was purchased with Ware's money, or for his use, or to defraud complainant, we must regard it as not in anywise liable for appellant's debt. In fact, the bill does not proceed upon the theory that Gould's purchase was fraudulent, and show that execution had been returned no property found, and ask that the land be subjected to sale to satisfy his judgment, as is required by the statute in cases where a creditor files a bill to reach property fraudulently held for the use of the debtor.

We now come to consider whether the sale by the trustee was valid and binding which was made to pay the debt to Noble. There is no pretense, as we have seen, that the debts were not *bona fide* owing from Ware to Noble. Nor is there

any objection to the trustee's notice, or the manner in which the sale was conducted until a sufficient amount of property was sold to pay the debts. It is, however, claimed that there was not the amount due which was claimed, and that the seven 40-acre tracts first sold produced a sum sufficient to pay the debts, and all that was subsequently sold was without power, and the sale was absolutely void. We think the evidence shows that there was on the day of sale over $9000 due on these debts, and. if so, for its entire satisfaction, it required a further sale of land.

But even concede that, for that purpose. a further sale was not necessary, the deed of trust authorized the trustee to sell and to pay costs, commissions, liens, etc., on the land. Now it appears that Gilmore's judgment became a lien on this land but a short time after the latter deed of trust was executed to secure Noble, and this lien is fully within the letter of the power, and we think within its spirit. It was not limited to prior liens any more than was the power to pay taxes and assessments. It was to pay liens of any kind, and this lien falls within that description. No one would contend that the trustee could not pay taxes that were levied or became due after the trust deeds were executed, and it would seem to be as reasonable to limit the taxes, assessments, costs and commissions to the past, as other incumbrances or liens. Such deeds usually require any surplus that may remain, to be paid to the person making the trust deed, but it will be conceded that the maker can provide as he chooses for its disposition, so that creditors are not defrauded. There is no appearance of fraud in authorizing and empowering the trustee to pay some other creditor the surplus, if he choose, so the debt be *bona fide,* and due at the time of the sale, and there is no pretense that this was not when the sale was made.

Suppose Ware preferred to have the Gilmore debt paid to that of complainant, was there any just reason why he should not exercise the preference at any time before the latter acquired a lien? We suppose not. Suppose, after there was

enough of land sold to pay Noble's debts, and the further sale by the trustee had stopped, and Ware had sold the land for cash and paid the Gilmore judgment, would there have been any fraud in such a sale, or would complainant have had any legal right to complain? If so, why? We are unable to see. He then had no lien on this land. It is true, the sheriff had levied upon it the day before, under an attachment from another county, but such a levy could create no lien until a certificate of the levy was duly filed in the office of the recorder of the county in which the land was situated. See *McClure* v. *Engelhardt*, 17 Ill. 47, *Tenney* v. *Hemenway*, 53 ib. 98, and *Gridley* v. *Watson*, ib. 186. Now, the certificate of levy here was not filed for record until four days after the sale. Hence complainant acquired no lien by virtue of the levy, as the land had been sold before the lien could attach.

But it is urged, that a written notice was given on the day of sale that the attachment had been sued out. Execution, attachment or judgment liens can not be so created. The sale of real estate is purely a creature of the statute, and it can only be done in the mode prescribed in the statute. It has provided that the lien shall be obtained in a particular manner, and no other mode can be employed to acquire it. To obtain the benefits of the statute in such cases, its requirements must be observed.

If the notice were insisted on, to show that Gould purchased the judgment with notice of appellant's claim, that can not avail, because he had exercised his statutory right to become a purchaser for Noble, as his agent, before he received the notice, and Noble's right to it was then complete. Equity recognizes the validity of such a purchase, and having paid for it in good faith, he could hold it with its lien on the land. In this purchase we see nothing that is inequitable. If appellant had seen proper to purchase that judgment, he would have acquired the benefit of the lien, and would have had the right to subject the surplus, after paying Noble's

debts, to the satisfaction of it and the judgment he subsequently obtained in his attachment suit. Noble, by his purchase, was, in equity, subrogated to Gilmore's rights, and none will doubt but he had a first and superior lien to that of appellant; and if so, by what means was it lost, or in what manner did appellant acquire a superior equity to that of Noble? It was not by the notice. It was not by levying the attachment and recording the levy; nor has any reason been suggested why or how it became a lien.

Appellant has resorted to a court of equity to obtain relief by enforcing his judgment, and before he can succeed he must show that his equities are superior to those of his adversary. In this case he has failed as regards this claim. On the contrary, it clearly appears that Noble's is prior in time and best in right. He has purchased in good faith, and for a valuable consideration, has possession, and no reason is perceived why he should be disturbed in that right.

Even if the sale could be opened for the benefit of appellant, he would be required to refund to Noble the amount of the Gilmore judgment, with interest. But we can see no just reason for letting him in on these terms, and he has not asked to be, as he has made no offer to refund that debt with interest.

It is urged, that the sale of the property was at such a sacrifice as, of itself, to show a combination to prevent appellant from collecting his debt, and to create a strong presumption that a portion of it was to be held in secret trust for Ware. The evidence, we think, shows that there was due, on the notes to Noble and on the Gilmore judgment, in the neighborhood of $16,000, and the lands on sections 10 and 11 were sold under the trust deed to secure Noble for $14,350, leaving $1650 of his debt unpaid. So far, then, as we can see, the lands purchased at that sale, in fact, stand him $16,000, more than $4000 a quarter section, or a trifle over $25.75 per acre. It is true, that appellant's witnesses place it at from $40 to $50 per acre, but on the other hand,

24      HALL *v.* GOULD *et al.*      [Sept. T.

Opinion of the Court.

appellees' witnesses fix it at from $25 to $30. The sales of a portion of this land soon after the purchase by Noble, at $37.50 per acre, included the crops growing on the ground, which the evidence tends to show were worth about $10 per acre. When it is remembered that there is no question upon which the most intelligent and truthful witnesses so widely differ, as that of the value of property in the past, we must conclude, on considering all the evidence, that this property was not sold for much if any less than its worth on a cash sale. If there was a sacrifice, it was not so large as to show or tend to show the sale fraudulent.

Gould returned to Ware a report or statement of his acts as trustee. In that he charges Ware with debts in the trust deeds, judgments, taxes, loans of money, and the amount ad-. vanced to purchase the Gilmore judgment, amounting in the aggregate to $22,901.39, and credits himself by sales of real estate and personal property purchased, amounting to $21,137.14, leaving Ware indebted to him in the sum of $1764.25. If this sum were taken from the $2000 received in notes from Fletcher, which it is urged was not credited to Ware in this account, then Gould would be indebted to Ware $235.75, which was probably allowed Gould to pay him for his time and trouble in managing the business for Ware. But be this as it may, such a small amount is not sufficient to raise a presumption of fraud requiring that these sales should be set aside, and complainant permitted to subject the property to the payment of his judgment.

The whole case considered in any view we have been able to take of it, we are unable to see that appellant has made a case entitling him to relief, and we are of opinion that the court below did not err in refusing it and in dismissing the bill.

The decree of the court below is affirmed.

*Decree affirmed.*